**ROYAL INSURANCE COMPANY OF AMERICA and Royal Lloyds of Texas, Plaintiffs,**

v.

**QUINN–L CAPITAL CORPORATION, Quinn–L Equities, Inc., Quinn–L Financial Corporation, and Quinn–L Mortgage Company, Defendants.**

**Civ. A. No. 3–90–0550–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 30, 1990.

**1218**

Chester Hinshaw & Patricia J. Villareal, Jones Day Reavis & Pogue, Dallas, Tex., for plaintiffs.

Samuel L. Boyd, Boyd and Associates, Dallas, Tex., and William R. Edwards & Michael G. Terry, Edwards & Terry, Corpus Christi, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are Plaintiffs Royal Insurance Company of Texas and Royal Lloyds of Texas' (collectively "Royal") Application for Injunctive Relief, filed October 30, 1990; and Defendants Quinn–L Capital Corporation, Quinn–L Equities, Inc., Quinn–L Financial Corporation, Quinn–L Management Corporation, Quinn–L Mortgage Company's (collectively "Quinn–L" or "the Quinn–L Entities") and numerous Individual Investors' (collectively the Investor Plaintiffs) Opposition to Royal's Application, filed October 31, 1990. In addition, the Court has before it Proposed Findings of Fact and Conclusions of Law submitted by both Plaintiffs and Defendants, exhibits (designated "PX" and "DX" herein) and deposition transcripts admitted into evidence by the Court. Also, the Court has taken judicial notice of the proceedings in various related judicial proceedings. *See* Hearing Tr. at 13–14.

Upon Royal's Application filed October 30, 1990 the Court entered a Temporary Restraining Order ("TRO") on October 31, 1990 after hearing oral argument of counsel. The TRO presently restrains Defendants from pursuing certain actions in state court in Brownsville, Texas wherein they seek to enforce against Royal a $740 million state court judgment obtained after this Court entered judgment on September 8, 1989 declaring that Royal had neither a duty to defend Quinn–L nor a duty to indemnify Quinn–L under the insurance policies at issue in these actions. The hearing on Royal's Application for Preliminary Injunction following the issuance of the TRO was extended from November 13, 1990 to November 20, 1990, a date agreed upon by the parties.

Having considered the pleadings and evidence on file as well as the oral argument of counsel at the November 20, 1990 hearing, the Court GRANTS Royal's Application for a Preliminary Injunction. The following constitute the Court's findings of fact and conclusions of law. Because "[t]he four prerequisites for preliminary injunctive relief are mixed questions of fact and law," *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir.1984), any factual finding which is actually a legal conclusion should be deemed to be and treated as such, and any legal conclusion which is really a factual finding should be deemed to be and treated as such.

### I. Findings of Fact.

*A. The Federal Liability Action and the First Federal Declaratory Action.*

In May of 1987, 26 lawsuits were brought in this Court by some 157 investors (the "Investor Plaintiffs" or simply "Investors") who allegedly lost money they had invested in various syndicated real estate investments offered or managed by

one or more of the Defendant Quinn–L Entities. Mr. S. Mark Lovell is the sole shareholder of all of the Quinn–L Entities, save Quinn–L Capital Corporation. Lovell is the sole owner of all of the voting stock of Quinn–L Capital Corporation and is the beneficial owner of all of its assets.[1] *See* PX 3 at ¶ 2; PX 4 at 3–11. The 26 lawsuits brought by the Plaintiff–Investors against Quinn–L and Lovell were consolidated by the Court into one case, Civil Action No. 3–87–1384–H.[2] The Federal Liability Suits alleged, *inter alia*, RICO and federal securities claims, as well as state-law causes of action of negligence, fraud, constructive fraud, breach of contract, breach of fiduciary duties, civil conspiracy, negligent misrepresentation, violations of the Texas Securities Act and the Texas Deceptive Trade Practices Act, exemplary damages, and attorneys' fees. All of these claims were based on a common nucleus of operative facts—that is, the Plaintiff–Investors claimed that they sustained damages due to the loss of their investments because of the conduct of Quinn–L. *See* PX 9.

Subsequently, the Quinn–L Entities, through the Dunn–Odom Insurance Agency, Inc., requested that Royal defend them in the Federal Liability Suits, which Royal agreed to do subject to a reservation of rights.[3] Quinn–L accepted this qualified defense by Royal. *See* PX 12–15. On May 10, 1988, Royal filed a declaratory judgment action in this Court. *See Royal Insurance Company of America v. Q–L Investments, Inc.,* No. CA3–88–1069–H (the "Federal Declaratory Judgment Action"). In this federal action, Royal sought a declaration that it owed no duty to defend and no duty to indemnify the Quinn–L Entities for any claims brought in the Federal Liability Suits. *See* PX 16 at ¶ 30.

On June 6, 1988 the Plaintiff–Investors moved to intervene in the Federal Declaratory Judgment Action "in order that they might be provided a fair opportunity to protect their bona fide interests, which have thus far been trampled upon by all involved parties." DX 12 at 9; PX 19 at 9. The Plaintiff–Investors sought to intervene in order to move to dismiss the Federal Declaratory Judgment Action for lack of justiciability.[4] *See* DX 12 at Ex. C; PX 19 at Ex. C. The Court denied the Plaintiff–Investors' Motion to Intervene, finding that they failed to meet the requirements for intervention as a matter of right pursuant to Federal Rule of Civil Procedure 24.[5]

---

1. Lovell filed for personal bankruptcy in March, 1987 and turned over all of his Quinn–L stock to the trustee of the bankruptcy estate. In January, 1989 the bankruptcy court returned the valueless stock to Lovell. At least since the start of Lovell's bankruptcy, Quinn–L has had no officers, directors, or significant assets, and since January, 1989 Lovell has had sole authority to act for Quinn–L. *See* PX 5 at 131, 146, 146–47; 6 at 12, 14, 27–28; 7; 8 at 162–68; 58 at ¶¶ 7, 50.

2. The individual lawsuits consolidated in CA3–87–1384–H were: 3–87–2384–H, 3–87–1589–H, 3–87–1873–H, 3–87–2113–H, 3–87–2114–H, 3–87–2115–H, 3–87–2116–H, 3–87–2117–H, 3–87–2118–H, 3–87–2119–H, 3–87–2120–H, 3–87–2121–H, 3–87–2122–H, 3–87–2123–H, 3–87–2124–H, 3–87–2125–H, 3–87–2126–H, 3–87–2127–H, 3–87–2128–H, 3–87–2129–H, 3–87–2130–H, 3–87–2131–H, 3–87–2132–H, 3–87–2133–H, 3–87–3068–H, and 3–88–1153–H (collectively the "Federal Liability Suits").

3. Royal stated, *inter alia*, that

 it is our contention ... that no coverage under the policies at issue is provided for the claims alleged in the complaints. Therefore,
 
 we intend to institute a declaratory judgment action....
 
 ... Royal ... will provide such a defense only on the condition that its acts or actions in doing so will not prejudice any rights or defenses it currently has, has had in the past, or may have in the future, under the policies at issue.... Royal specifically reserves the right to go forward with the prosecution of a declaratory judgment action ... seeking a declaration that there is no coverage afforded under the policies at issue....
 
 PX 13 at 6–7.

4. Quinn–L also moved to dismiss the First Declaratory Judgment Action on the ground of lack of justiciability. *See* PX 17. The Court denied that motion by its Memorandum Opinion and Order filed August 19, 1988, in which it found that "the parties' positions are concrete and adversarial" and that the dispute over the insurance policies' coverage was independent of the Federal Liability Action. Memorandum Opinion and Order entered August 19, 1988, at 3; *see id.* at 3–4.

5. Rule 24 reads in pertinent part:
 Upon timely application anyone shall be permitted to intervene in an action ... when the

The Quinn–L Entities filed three documents in the Federal Declaratory Judgment Action on February 10, 1989. First, Quinn–L filed its Answer. The Quinn–L Answer asserted fifteen affirmative defenses, including that Royal was estopped to deny defense and indemnification obligations because of "acts and courses of conduct of [Royal] agents, representative, and employees." PX 22 at 6.

The second document Quinn–L filed on February 10, 1989 was a counterclaim against Royal seeking declarations of duties to defend and to indemnify under seventy-four insurance policies alleged to be issued by Royal and other companies, and not just under the general comprehensive business policy and umbrella policy under which the Quinn–L Entities originally had requested a defense. *See* PX 21 at Ex. A. The counterclaim sought a declaration that these numerous policies "provide coverage and/or indemnity for any losses incurred by [Quinn–L] arising from the claims asserted" in the Federal Liability Suits. PX 21 ¶ 3, at 2. Furthermore, Quinn–L alleged in the counterclaim that the Federal Liability Suits "state causes of action alleging an occurrence resulting in property damage, bodily injury, or other liability within the coverage provided by one or more of the policies" and that these occurrences "are not excluded by the limitations, exclusions, conditions, endorsements, riders, or forms made a part of the policies, or any one of them." *Id.* ¶¶ 6, 7, at 3.

The third document Quinn–L filed on February 10, 1989 was their Response to Royal's Motion for Summary Judgment, which had been filed on December 12, 1988.

In Part III of their Response, entitled "Plaintiffs As A Matter Of Law Have A Duty To Defend Defendants On The Allegations In The Underlying Complaints," the Quinn–L Entities stated the following:

Under Texas [l]aw, the duty to defend is determined solely from the face of the pleadings and it arises if one or more of the underlying claims, *taken as true*, are sufficient to state a cause of action coming within the terms of the policy. *Rhodes v. Chicago Insurance Co., A Division of Interstate National Corporation*, 719 F.2d 116, 119 (5th Cir.1983).... In applying the "pleadings only" rule the Court should indulge in the most liberal interpretation of the allegations with doubts as to the import of the allegations resolved in favor of the insured and coverage.... Even when the complaint pleads in the alternative or alleges more than one cause of action, the insurer is obligated to defend, as long as the complaint alleges "at least one cause of action within the coverage of the policy." *Rhodes, supra* at 119.

It is clear from a reading of the allegations contained in the pending consolidated suits [the Federal Liability Suits] that Defendants are not only owed a duty to defend by Royal, but are *within the terms of coverage* under the policies....

Policy PLA 172833 is denominated as a "Comprehensive Catastrophe Liability Policy" (Big Shield Policy), with a $5,000,000 occurrence policy limit.... Big Shield Policy also includes liability for all professional liability unless limited by the amounts stated in the declarations, or exclusions.... The coverage under the Big Shield Policy as stated

applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). The Court, *noting that* "[t]he real party in interest is the party possessing the right sought to be enforced, which is not always the party who will ultimately benefit from the recovery," PX 20 at 3, found that the Investor Plaintiffs were not real parties in interest to the lawsuit. *See id.* at 3–4. The Court further found that "any interest which the investors might have in the subject matter of the declaratory judgment is adequately represented by the existing Defendants." *Id.* at 4. The Court also noted that insofar as the Investor Plaintiffs sought to raise the same issue of dismissal for lack of a justiciable controversy as was addressed by the Court's Memorandum Opinion and Order entered August 19, 1988 denying Quinn–L's identical motion, the Court's conclusion that Quinn–L adequately represented the Investor Plaintiffs was reinforced.

above covers personal injury which includes[ ] mental injury, mental anguish, malicious prosecution, humiliation, also invasion of rights of privacy, liable [sic], slander, or defamation of character.

. . . .

... Moreover, in the Quinn–L litigation [the Federal Liability Suits], the Plaintiffs seek not only damages for loss of investment and future profits; but also personal injury, property damage, and advertising liability in addition to:

. . . .

(3) treble damages, as consumers of services for Defendants' unlawful acts and conduct for violations of the Deceptive Trade Practices Act. Tex.Bus. & Com.Code § 17.41 *et seq.*....

PX 24 at 5–9 (footnotes omitted). The Quinn–L Entities further argued in their Rejoinder, filed March 14, 1989, that claims for mental anguish were both included in the Federal Liability Suits and were covered by the policies at issue in the Federal Liability Suits. In Section D of that Rejoinder, Quinn–L states:

1. *Mental Anguish....* Amongst the allegations and claims in the *Akin* and *Barrett* actions are claims for negligence, negligent misrepresentation, wreckless [sic] representation, Deceptive Trade Practice Act violations, and various [other claims]....

... Mental anguish has specifically been held to be an injury for which damages may be recovered under the Deceptive Trade Practices Act. *See*[ ] *Miller v. Dick[en]son,* 677 S.W.2d 253 (Tex.App.— F[ort] Worth 1984, writ refused n.r.e.). In *Miller,* despite absence of physical injury, damages for mental anguish were awarded under the DTPA.... Likewise, in *St. Elizabeth Hospital v. Garrard,* the Supreme Court [of Texas] held proof of physical injury is no longer required in order to recover for negligent infliction of mental anguish. 730 S.W.2d 649 (Tex. 1987).

It is not only well settled that mental anguish, which is covered by the relevant policies herein, is included amongst the component elements of a Deceptive Trade Practices Act claim, it is also included amongst the component elements of the Plaintiffs' wreckless [sic] misrepresentation claims in the *Akin* and *Barrett* actions.

PX 25 at 5–6.

The parties having fully litigated all of these issues, as well as others, the Court entered its Memorandum Opinion and Order on April 14, 1989 granting Royal's Motion for Partial Summary Judgment. After quoting the pertinent policy provisions, the Court held as follows:

The plaintiff-investors in the Quinn–L cases allege claims for relief arising from the offering of investments in syndicated partnerships established by one or more entities within the Quinn–L Group and the operation of the partnerships. Complaints include Securities claims, RICO claims, DTPA claims, fraud and others.

The Court finds that the language of the insurance coverage is unambiguous, taken alone or in consideration of the Quinn–L cases. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n.,* 696 S.W.2d 378, 381 (Tex.1985) (If there is no ambiguity in an instrument, its construction is a matter of law for the Court.) As a matter of law, the allegations in the pending suits do not state claims within coverage. Although the investors allege loss of their investments, they allege no injury to tangible property which could constitute an "occurrence." Additionally, none of the losses constitutes "property damage" as required by the policy.

Memorandum Opinion and Order entered April 14, 1989 at 2–3 (footnote omitted). The Court further held that "[n]either have Defendants shown that personal injuries (in the form of mental anguish) were caused by an 'occurrence.'" *Id.* at 3 n. 3.

The Court actually entered Summary Judgment against all Defendants except those in bankruptcy on April 27, 1989. *See* PX 27. In entering the Partial Summary Judgment, the Court noted that it was based on consideration of all of the issues raised and litigated by Royal's Motion,

Quinn–L's Response, Royal's Reply, and Quinn–L's Rejoinder.

> The Court, having reviewed and considered the arguments of counsel and the authorities cited in support thereof, is of the opinion and finds that there is no genuine issue of material fact and [Royal's] Motion for Partial Summary Judgment should be granted. The Court finds that the language of the policies [at issue in the lawsuit] is unambiguous.

PX 27 at 1. The Court then recited all of the cause numbers of the suits then pending as the consolidated Federal Liability Suits, defined them for the purpose of convenience as the "pending suits," and stated that it "finds, as a matter of law, that the allegations in those suits do not state a claim within the coverage provided by the policies." *Id.* at 2. Accordingly, the Court found that Royal had no duty to defend Quinn–L and likewise had no duty to indemnify Quinn–L for any of the claims raised by the Federal Liability Suits. *See id.* Thus, the Court formally entered Judgment against the Quinn–L entities.[6]

Following the April 14, 1990 Order and the April 27, 1990 Judgment, Quinn–L submitted its Report Identifying the Issues Remaining to be Litigated, filed May 4, 1989. Quinn–L told the Court in that Report that

> it is the Defendants' position that excluding the issues of entitlement to and amount of reasonable attorneys['] fees, there are no remaining issues to be litigated in this case, either under Petitioner's Second Amended Petition For Declaratory Judgment or Defendants' Original Counterclaim.

PX 28 at 1–2.

On July 28, 1989, Royal and the Quinn–L Defendants submitted a stipulation of facts to the Court concerning certain insurance policies purportedly issued by Royal to Quinn–L. By that stipulation, the parties acknowledged that many policies not specifically enumerated in the Court's Summary Judgment fell within the scope of the Court's ruling. *See* PX 29.

Finally, on September 8, 1989 the Court entered a separate final judgment that consolidated the terms of the April 27, 1989 Summary Judgment, the May 4, 1989 Quinn–L Report, and the July 28, 1989 Stipulation entered into between Quinn–L and Royal. This Final Judgment, like the Summary Judgment, recited all of the cause numbers of the Federal Liability Suits and for the purpose of convenience referred to them as the "pending suits."[7] The Court

---

**6.** As will be discussed more fully in the Court's Conclusions of Law, *infra*, a partial summary judgment that is final and appealable pursuant to Federal Rule of Civil Procedure 54(b) is a judgment that the Court may protect or effectuate by injunction. *See Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108, 1113–14 (5th Cir.), *cert. denied*, 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973); *see also* 17 C. Wright & A. Miller, *Federal Practice and Procedure: Jurisdiction 2d* § 4226 at 550 (1988) (stating that a federal court may issue an injunction to protect or effectuate "a partial summary judgment that has been made final and appealable").

The Investor Plaintiffs contend that it was not until the Dallas State Action that they "pleaded claims for mental anguish and mental injuries as damages for negligent and or grossly negligent acts of the Quinn–L Entities." Defendants' Proposed Finding of Fact 17, at 7. In addition, the Investor Plaintiffs seem to place great stock in their contention that Royal also believed that mental anguish and mental injury were not issues before the Court in the Federal Actions. *See, e.g., id.* 23, at 10 (quoting DX 43); *id.* 26, at 11 (quoting DX 9); *id.* 27, at 11–12 (quoting DX 10).

What matters, of course, is not what the parties thought, but what they actually presented to the Court for determination and what the Court actually decided. The record clearly shows that the issue of mental anguish was fully litigated in the Federal Declaratory Judgment Action and was necessary to the Final Judgment entered in that case.

**7.** At the time the Final Judgment was entered, however, the Federal Liability Suits had been dismissed by the Court's Order signed August 28, 1989. *See* DX 30; PX 56. That Order granted the Federal Liability Plaintiffs' Conditional Motion to Dismiss, filed August 3, 1989. *See* PX 55. The Investor Plaintiffs' Motion represented that "Plaintiffs and these Quinn–L Defendants have reached an agreement in principle for settlement of plaintiffs' claims" and requested the dismissal in order to "further streamline the litigation pending in this Honorable Court." PX 55 at 2. Despite this representation to the Court, the Investor Plaintiffs state that "the claims were dismissed with the clear intention that the state claims would be refiled in state district court." Samuel Boyd Deposition, vol. II at 132.

again held that Royal had neither a duty to defend nor a duty to indemnify Quinn–L for any of the claims brought in the Federal Liability Suits. The Judgment did not purport to dispose of any of the claims brought in the Federal Liability Suits, but rather was a final, appealable Judgment in favor of Royal on all of the issues litigated in the Federal Declaratory Judgment Action. *See* Fed.R.Civ.P. 54(b). All of the Defendants in the present action were Defendants in the Federal Declaratory Judgment Action, *compare* PX 1 *with* PX 30, and that Judgment never was appealed.

### B. The Dallas State Action.

As already noted, *see supra* note 7, the Court dismissed the Federal Liability Suits by its Order signed August 28, 1989. In that Order, the Court dismissed the Plaintiffs' federal claims with prejudice and dismissed without prejudice Plaintiffs' remaining state law claims pursuant to the rules established by *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Approximately two weeks later, on September 14, 1989, the Investor Plaintiffs filed a lawsuit against the Quinn–L Entities in the 298th Judicial District Court of Dallas County, Texas, styled *Adkisson v. Quinn–L Capital Corporation,* Cause No. 89–11030–M ("Dallas State Action"). DX 18; PX 58. Like the Federal Liability Suits, the Dallas State Action alleged fraud, constructive fraud, negligence, breach of contract, breach of fiduciary duties, civil conspiracy, negligent misrepresentation, violations of the Texas Securities Act and Texas Deceptive Trade Practices Act, exemplary damages and attorneys' fees. The Dallas State Action was based on the same transactions as were the earlier Federal Liability Actions. *Compare* PX 9 *with* PX 58. In fact, the Plaintiffs explicitly stated that the state-law claims brought in the Dallas State Action were the same state-law claims originally brought in the Federal Liability Suits.

9. Plaintiffs originally brought suit against the Defendants named herein and various other parties that were involved in the Quinn–L Group offerings in the United States District Court for the Northern District of Texas, Dallas Division, in a series of actions, filed between May 30, 1987, and March 18, 1988. These actions were premised on violations of various federal statutes, as well as the pendent state claims asserted herein. Plaintiffs pursued this litigation in federal court until August 29, 1989, at which time the the the [sic] District Court entered its Memorandum Opinion and Order dismissing the *federal* causes of action against the Quinn–L Defendants. The Court further, pursuant to the doctrine in *United Mine Workers v. Gibbs,* dismissed, without prejudice, all remaining pendent state claims against the Quinn–L Group.

10. Pursuant to Section 16.064 of the Texas Civil Practice and Remedies Code, Plaintiffs have filed this Original Petition, premised on the state law causes of action that have been dismissed, in federal court, without prejudice, within sixty (60) days of dismissal.... Plaintiffs therefore are entitled to and do now hereby assert their state law claims in this forum.

DX 18 ¶¶ 9, 10, at 7–8; PX 58 ¶¶ 9, 10, at 7–8; *see* DX 19 ¶¶ 9, 10, at 3–4 (repeating quoted assertions in Plaintiffs' First Amended Original Petition, filed May 4, 1990).

In October of 1989, Lovell, on behalf of the Quinn–L Defendants, directed his personal attorney, J. Broocks Greer, III, to request a defense of the Dallas State Action from Royal. *See* PX 5 at 145 (Deposition of Lovell). Greer asked for the defense by letter dated October 5, 1989. *See* PX 60; PX 59 at 116 (Deposition of Greer). Royal responded to the request for a defense by letter dated November 14, 1989, wherein Royal offered a defense subject to a reservation of rights. *See* PX 61. Royal retained an attorney, Coyt Randall Johnston, to represent the Quinn–L Defendants pending a response to its offer of a defense subject to a reservation of rights. *See* PX 62, 63. At the time an answer was due in the Dallas State Action, Quinn–L had made no effort to obtain independent counsel to

enter an appearance,[8] and Johnston filed a general denial to Plaintiffs' petition in the Dallas State Action on November 17, 1989. Although Lovell, on behalf of Quinn–L, denies ever having authorized Johnston to appear in the Dallas State Action, Lovell has admitted that he, too, would have denied the Plaintiffs' allegations. *See* PX 8 at 209. Indeed, Lovell expressed to Johnston his appreciation for Johnston's efforts in the litigation. *See* PX 86.

Almost two months later, by letter dated January 9, 1990, Quinn–L rejected Royal's offer of a defense subject to reservation of rights and stated that "[t]he [Quinn–L] companies will accept a defense only if coverage is acknowledged." PX 67. The evidence conclusively establishes that Lovell, on behalf of the Quinn–L Entities, refused Royal's offer of a defense subject to a reservation of rights at the urging of the Investor Plaintiffs, *see* PX 59 at 117–

19, and because of a Compromise and Settlement Agreement entered into by the Investor Plaintiffs, on the one hand, and Lovell, his wife, and Ogden Sutro (all of whom were individual Defendants in the Federal Liability Suits), on the other.[9] This Agreement was signed on April 5, 1989— while the Federal Liability Suits and the Federal Declaratory Judgment Action were pending.[10] The sole purpose of the Agreement was to pursue Royal. *See* PX 42 at 1–2 (letter from Investor Plaintiffs' counsel stating that "the whole point of the Compromise and Settlement Agreement was for Plaintiffs to be able to pursue Royal Insurance Company").

Thereafter, Royal instructed Johnston to take no further action in the Dallas State Action, *see* PX 63, 69, and informed Greer that Quinn–L would have to replace Johnston and that Johnston would withdraw

---

8. Quinn–L's failure to obtain independent counsel was clearly not due to ignorance of the law or of the consequences of not answering in the Dallas State Action, as the following excerpt from a deposition of S. Mark Lovell shows:

Q. Now, [Mr. Lovell,] you're a lawyer, and you know that if nobody answers a lawsuit, defaults can be entered against the defendant, don't you?
A. I generally know that, yes.
Q. Had you made any arrangements to have an attorney or yourself just file an answer in that lawsuit to prevent default against the Quinn–L Companies?
A. I did not. I couldn't afford one at that point.

. . . .

Q. Did you have any attorneys that represented you personally at that time?
A. Yes, Rick Adkinson and Broocks Greer.
Q. Were you paying them?
A. I was not.
Q. And, in fact, Mr. Greer had been acting as attorney on behalf of Quinn–L by writing letters on their behalf, hadn't he?
A. He had.
Q. And you had been giving him instructions to act on behalf of Quinn–L.
A. That is correct.
Q. But your testimony is you made no arrangements to answer a multi-million dollar lawsuit based on false allegations that were filed against your corporations?
A. Both of those attorneys [Adkinson and Greer] ... told me they could not undertake ... on credit, a task of de[f]ending this type of thing....

PX 8 at 209, 210–11 (Deposition of Lovell).

9. Lovell stated in a deposition taken on October 18, 1990:

... There was certainly an offer of some type of a defense offered me by Royal or to the companies. I had gone through a similar situation like that with Royal on other situations. And for two reasons, one, my own and, two for the purposes as part of my settlement agreement with the plaintiffs, I advised to keep them informed.

I refused to accept a settlement or a defense unless there was a full defense. Coverage, I guess, is what it is. I would still maintain that because of those two things that I just mentioned.

PX 8 at 35 (Deposition of Lovell).

10. The Compromise and Settlement Agreement provided, *inter alia,* that the Investor Plaintiffs would not execute against Lovell on any of the claims in their lawsuits; that all claims Lovell might have against any insurer, including Royal, arising from the lawsuits was assigned to the Investor Plaintiffs; that Lovell was obligated to cooperate with the Investor Plaintiffs in the litigation; and that the Investor Plaintiffs were obligated to withdraw their previously filed objections to Lovell's discharge in bankruptcy. *See* PX 31 (Compromise and Settlement Agreement).

In addition, the evidence demonstrates that although the Compromise and Settlement Agreement between the Investors and Lovell was not signed until April 5, 1989, settlement negotiations between the Investors' counsel and Lovell started as early as June, 1988 and resulted in a letter agreement by October 11, 1988. *See* PX 33–35.

from the case. *See* PX 71–74. Johnston informed Greer and Lovell of his intention to withdraw from the case, informed them of the process of withdrawal and the likely consequences of their failing to obtain substitute counsel, and closed by stating that "[i]f I have not received some direction from you by April 30, ... it will be necessary for me to move to withdraw even in the absence of replacement counsel." PX 75 at 2. Neither Lovell nor Quinn–L took any steps to replace Johnston, *see* PX 3 ¶¶ 29, 30, at 7, and Johnston moved to withdraw on May 16, 1990. *See* PX 79.

On May 21, 1990, while Johnston's Motion to Withdraw was pending, the Investor Plaintiffs served 120 Requests for Admissions directed to each of the five Quinn–L Defendants. *See* PX 80, 70 at 125. Johnston answered the Requests, denying "a very large percentage of them." PX 70 at 127 (Deposition of Johnston). Lovell has testified that he, too, would have denied the requests for admissions. PX 5 at 81–101 (Deposition of Lovell). On May 30, 1990 the Dallas state court granted Johnston's Motion to Withdraw and directed all further notice and correspondence with Defendants regarding the lawsuit to be sent to Lovell or Greer. *See* PX 81. Neither Lovell nor any representative of Quinn–L did anything to obtain counsel after Johnston withdrew, and Lovell's only response to Johnston's repeated attempts to communicate with him was a letter dated June 13, 1990, that read as follows.

I have received your letters of June 1 and June 7. I am sorry to be a little late responding since I have been traveling. The companies that are the subject of this litigation have been through bankruptcy or else were part of my personal estate, which has been through a bank-

ruptcy. Several months ago I entered into a settlement with the plaintiffs represented by Sam Boyd. I am no longer an officer or director nor am I supposed to be an agent of service for any of these companies. While I continue to receive mail such as I have received from you, I have been advised by counsel I have no responsibility in their opinion. Certainly that conclusion was the intent of my settlement. However, not wanting to appear unconcerned about the plight of this situation, I am making this response and this information available to you in case you are not aware of such. I appreciate very much your efforts in this regard. PX 86.

On June 27, 1990 the Investor Plaintiffs moved to strike the denials of the requests for admissions submitted by Johnston on behalf of Quinn–L for the reason that the denials were prepared without the client being consulted. Although Lovell was aware of the motion to strike the denials, *see* PX 3 at 9 (Lovell Affidavit), he did nothing to oppose the motion.[11] Accordingly, the unopposed motion to deem the denied requests for admissions "admitted" was granted by a visiting judge on July 6, 1990. *See* PX 89.

The Dallas State Action was called for trial on August 7, 1990. Although Lovell was aware of the trial date, *see* PX 83, 84, he did not enter an appearance or retain counsel to appear on behalf of the Quinn–L Defendants. *See* PX 90 at 1 (Dallas Judgment). Accordingly, based on "the evidence presented by Plaintiffs consisting of 120 admitted facts and the cumulative evidence of expert witnesses as to the calculation of damages," the Court entered a default judgment [12] against the Quinn–L enti-

---

**11.** By the terms of the April 5, 1989 Agreement Lovell was obligated to cooperate with the Investor Plaintiffs.

**12.** The Court notes that the Investor Plaintiffs, in both the TRO hearing and the Preliminary Injunction hearing, have insisted that the judgment in the Dallas State Action was not a default judgment. Investor Plaintiffs' counsel has insisted that "it was not a default judgment.... [T]he judge did not enter judgment because the other side didn't show up. That is what is

thought of as a default judgment." DX 17 at 29 (Transcript of TRO Hearing, Statement of Samuel Boyd). Of course, the Investor Plaintiffs do admit that no one appeared for Defendants at the Dallas trial. "It was a trial. They didn't show up but what if they had shown?" *Id.* at 29.

Such contentions notwithstanding, the Dallas Judgment itself clearly states that Defendants did not appear "by counsel or otherwise." PX 90 at 1; *see also* PX 185 at 3–4 (Trial transcript of Dallas State Action). Furthermore, it is clear

ties for more than $740 million. *See* PX 90. The Court assessed damages against the Defendants for lost investment, bodily injury ("including mental pain, suffering and anguish which has manifested itself physically"), exemplary damages, and attorneys' fees. *Id.* To state the facts bluntly but fairly, the Investor Plaintiffs bought Lovell's cooperation with their April 5, 1989 Agreement and through their collusion with Lovell obtained an enormous default judgment against Lovell's companies.

### C. The Assignment and the Brownsville Actions.

On September 4, 1990 the Quinn–L Entities, through Lovell, executed an assignment of their rights and causes of action, if any, against Royal and its agents to the Investor Plaintiffs. *See* PX 4. By the terms of the Assignment, the Investor Plaintiffs agreed to pay Quinn–L ten dollars ($10) and Lovell personally five percent (5%) of any future recoveries against Royal in excess of the $740 million Dallas State Action default judgment.[13] *See id.* at 9. Lovell again agreed to cooperate with the Investor Plaintiffs, who in turn promised to pay for Quinn–L's legal representation in the present action and to reimburse Lovell for expenses incurred on the Investors' behalf. *See id.* at 9–10.

The Investor Plaintiffs who are the assignees by the terms of the Assignment are the same persons who brought the Dallas State Action, *compare* PX 4 *with* PX 58, and executed the Assignment with knowledge of the Judgment in the Federal

Declaratory Judgment Action. *See* PX 4 at 5. The Judgment in the Federal Declaratory Action was entered against the same Quinn–L Entities which executed the Assignment with the Investor Plaintiffs. *Compare* PX 4 *with* PX 30.

On the same day the Assignment was executed—September 4, 1990—the Investor Plaintiffs filed suit in the District Court for the 107th Judicial District, Cameron County, Texas, in Cause No. 90–09–4464–A (the "Brownsville Liability Action"). *See* PX 103. In that action, the Investor Plaintiffs, "[a]s judgment creditors and assignees of the Quinn–L Entities," allege that "[t]he Quinn–L Equities' [sic] conduct ... has caused the Plaintiffs property damage and bodily injury and, therefore, the Defendants [Royal and others] are responsible for the payment of the Judgment entered [in the Dallas State Action]." *Id.* at 14. The petition in the Brownsville Action further states that Royal wrongfully refused to defend the Dallas State Action, that Royal wrongfully denied coverage for the claims asserted in that action, and that Royal acted in bad faith in denying coverage and denying a defense without a reservation of rights. *See id.* at 15–16. In addition, the Investor Plaintiffs allege that, if in fact there is no coverage under the disputed policies, Royal either is estopped from denying coverage or waived its right to deny coverage. *See id.* at 17.

The next day, September 5, 1990, before the Royal Defendants were served in the action, the Brownsville court set a trial

---

that the Investor–Plaintiffs knew their action would be unopposed, insofar as the judgment they submitted to the court, *see* PX 185 at 21–22 (Trial transcript of court agreeing to sign judgment presented by Plaintiffs without revision), recited the failure of Defendants to appear at the trial. Furthermore, the trial transcript clearly shows that the Investor Plaintiffs' claim that "[t]he *Court,* not the *Plaintiff,* determined the amount of exemplary damages," DX 17 at 30, is simply untrue.

In addition, the Court finds that the Investor Plaintiffs' counsel failed to inform the Dallas court of the existence of the Court's Judgments of April 27 and September 8, 1990. *See* Samuel Boyd Deposition, vol. IV at 18–19 (stating that "I didn't have any obligation to plead any other judgment, any other case" to the Dallas court

and that "Judge Sanders' order had nothing to do with my case"); PX 185 *passim* (Transcript of Dallas Trial). The applicable State Bar Rule reads in pertinent part: "A lawyer shall not knowingly ... fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel...." State Bar Rule 3.03(a)(4), Tex. Gov't Code Ann. ch. 82, tit. 2, subt. G, art. 10, § 9 (Vernon Supp.1991).

**13.** The Investor Plaintiffs are seeking to treble the $740 million Dallas Judgment in the Brownsville Liability Action. Lovell's cut of the potential $2.2 billion judgment would be some $74 million.

date for the action of December 10, 1990. *See* PX 104, 105. The Brownsville court did this in violation of its own rules, which provide that a case will be set for trial after the filing of an answer. *See* Cameron Cty.Civ.Ct.R. 1.5(a). On October 12, 1990, the Investor Plaintiffs filed a motion for summary judgment, which was set for hearing on November 8, 1990. *See* PX 106, 107.

On September 17, 1990, the Investor Plaintiffs filed another action in the Brownsville court, seeking a declaratory judgment (the "Brownsville Declaratory Judgment Action"). *See* PX 108 (Plaintiffs' Original Petition), 109 (Plaintiffs' First Amended Original Petition). In this action, the Investor Plaintiffs seek a declaration that Royal and/or the Dunn–Odom Insurance Agency, Inc. are liable for the default judgment in the Dallas State Action.

The Brownsville Declaratory Action addresses only the four policies that were addressed by the Court in its Summary Judgment in the Federal Declaratory Judgment Action. *See* PX 108 ¶ 18 at 9, PX 109 ¶ 18 at 9. The Brownsville Liability Action, however, concerns 71 policies allegedly issued by Royal or by companies allegedly related to Royal that the Investor Plaintiffs allege may provide coverage for the claims asserted in the Dallas State Action. Of the 71 policies, 62 are included in the Court's final judgment of September 8, 1989. *See* PX 29, 30, 103 ¶ 11. Of the remaining nine policies at issue in the Brownsville Liability Action, seven of them (Nos. PYH D4–53–40, PYN 52–23–13, YAD 70–23–0, YA D7–03–39, YN 10–03–29, PYA 17–28–33, PYA D3–53–34) are actually covered by the Final Judgment of September 8, 1989 and are typographical errors, or simply are policies that do not exist. *See* Mooney Aff. ¶¶ 4–5, Pokluda Aff. The last two policies (Nos. PYA D7–02–30, PYH D4–53–48) contain insuring clause language identical to that previously litigated before and adjudicated by the Court. *See* Mooney Aff. ¶¶ 6, 7; PX 30 at ¶ 2; Pokluda Aff. Accordingly, all of the policies or their relevant language has been litigated before this Court in the proceedings discussed above.

## D. The Present Declaratory Judgment Action.

The present declaratory judgment action was filed on March 9, 1990. Royal seeks a declaratory judgment to enforce and protect the Court's prior judgment against the Quinn–L Entities. *See* PX 1 at 1 (Royal's Original Petition). Royal seeks this declaration on the ground, among others, that the issues of whether Royal had a duty to defend or to indemnify Quinn–L for claims brought in the Dallas State Action were fully litigated in the Federal Declaratory Judgment Action and decided in Royal's favor.

Quinn–L answered Royal's Complaint on August 15, 1990, *see* PX 96, and on September 4, 1990 Royal moved to amend its complaint in order to name the Investors as Defendants. *See* PX 98. This motion was granted on September 26, 1990. At the time of the hearing on Royal's Application for Preliminary Injunction on November 20, 1990, Royal had outstanding two summary judgment motions. The first of these motions is limited to the claims for loss of investment in the Dallas State Action. The second motion concerns the claims for mental anguish brought in the Dallas State Action and also asserts that the issue of whether Royal had a duty to defend or to indemnify Quinn–L against the Dallas State Action loss of investment claims has already been litigated and the subject of a final judgment.

## II. Conclusions of Law.

■ The Court has ancillary jurisdiction to enforce and protect its prior judgment in the Federal Declaratory Judgment Action. *See Samuel C. Ennis & Co. v. Woodmar Realty Co.*, 542 F.2d 45, 48 (7th Cir.1976) (holding that federal court has jurisdiction over nondiverse parties in action to enjoin state court proceedings where state court action could nullify prior federal judgment), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977); *see also Local Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934) (holding that "a federal court of equity has jurisdiction

of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein"); *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 868–69 (5th Cir.1984) (citing *Local Loan Co. v. Hunt* in holding that district court has ancillary jurisdiction over case to protect its prior judgment from state court proceedings even where party opposing jurisdiction denies that its state proceedings would nullify prior federal judgment); *see generally* 17 C. Wright & A. Miller, *Federal Practice and Procedure: Jurisdiction 2d* § 4226 at 547–48 (1988) (stating that "[n]o independent basis of jurisdiction is required for a federal court to entertain an application to enjoin relitigation in state court. This is thought to be within the ancillary jurisdiction of the federal court").

■ The Court has personal jurisdiction over the Defendants that have appeared in this action, and may issue an injunction that restrains nonparties and parties who have not yet appeared or not yet been served if those persons possess sufficient minimum contacts with the State of Texas to support the exercise of personal jurisdiction. *See generally United States v. New York Telephone Co.*, 434 U.S. 159, 174, 98 S.Ct. 364, 373, 54 L.Ed.2d 376 (1977) ("The power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, ... and encompasses even those who have not taken any affirmative action to hinder justice."); *United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 907 F.2d 277, 281 (2d Cir.1990) ("Injunctions may be issued against non-parties under the All Writs Act"); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Insurance Litigation)*, 770 F.2d 328, 338 (2d Cir.1985) ("An important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties");

*United States v. Hall*, 472 F.2d 261, 265 (5th Cir.1972) (holding that "[c]ourts in equity have inherent jurisdiction to preserve their ability to render judgment"). Every person or entity subject to the injunction hereby issued has purposefully availed himself of the benefits and protections of Texas law by participating in the Dallas and Brownsville Actions and, in the case of the Quinn–L Entities, by being organized pursuant to Texas law. Accordingly, all of those subject to the injunction have the requisite minimum contacts with Texas to be bound by the injunction.

■ The Court has the power to issue the injunction based on the All Writs Act, 28 U.S.C. § 1651(a), which provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The power thus conferred upon the Court by the All Writs Act includes the power to issue injunctions. *See United States v. New York Telephone Co.*, 434 U.S. at 172–74, 98 S.Ct. at 372–73.

■ The Court's power to issue the injunction also, and independently, derives from the Declaratory Judgment Act, 28 U.S.C. § 2202, which provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." Royal seeks injunctive relief based on the Court's prior declaratory judgment. Accordingly, the Court is empowered to issue the injunction requested by Royal pursuant to 28 U.S.C. § 2202.

## A. The Anti–Injunction Act: Provisions Authorizing Injunction.

Because the Court is hereby enjoining state court proceedings, the Court first must explain why the present injunction satisfies one or more of the exceptions to the Anti–Injunction Act. The Anti–Injunction Act expressly allows the Court to enjoin state court proceedings in certain cir-

cumstances, such as where parties seek to relitigate claims that have already been resolved by the federal court or where litigants seek to undermine the federal court's ability to resolve a case by filing a potentially crippling parallel state action. The Anti–Injunction Act reads as follows:

> A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The Court finds that the present injunction is authorized by the "relitigation" exception and the "in aid of jurisdiction" exception to the Anti–Injunction Act.

 The Fifth Circuit has stated two fundamental justifications for the relitigation exception to the Anti–Injunction Act. First, principles of federalism are enhanced when an injunction properly is issued pursuant to the relitigation exception because "nothing would be as productive of friction between the state and the federal courts as to permit a state court to interpret and perhaps to upset such a judgment of a federal court." *Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp.*, 244 F.2d 394, 400 (5th Cir.1957), (quoted in *International Ass'n of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125, 130 (5th Cir.1975)). "While § 2283 was designed to ensure the state courts' adjudicative potency, its exceptions assure that the federal courts and their judgments will not be eunuchized and that their muscularity will not be atrophied." *Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108, 1114 (5th Cir.1973). In the present action, the Investor Plaintiffs and the Quinn–L Entities are asking the state court in Brownsville to upset the final judgment entered by the Court in the Federal Declar-

atory Judgment Action. It is an express purpose of the relitigation exception to allow the Court to prevent such an unnecessary conflicting judgment by a state court.

Second, the Fifth Circuit "advanced an even more practical justification for this doctrine in the *Woods Exploration* case: the relitigation exception 'prevents multiple litigation of the same cause of action and it assures the winner in a federal court that he will not be deprived of the fruits of his victory by a later contrary state judgment which the Supreme Court may or may not decide to review.'" *International Ass'n of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125, 130–31 (5th Cir.1975), (quoting *Woods Exploration and Producing Co. v. Aluminum Co. of America*, 438 F.2d 1286, 1312 (5th Cir.1971) (citing Note, *Federal Power to Enjoin State Court Proceedings*, 74 Harv.L.Rev. 726, 734 (1961)), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972)). As the Fifth Circuit stated recently, the relitigation exception is "aimed at preventing the costly and judicially wasteful determination of issues in the state court." *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 721 (5th Cir. 1990). In the present case, the Investor Plaintiffs and the Quinn–L Entities are asking the Brownsville court not only to declare their rights under the disputed insurance policies in a manner directly contrary to this Court's prior ruling, but also to deprive Royal of its victory in this Court by enforcing (and trebling) the collusively obtained $740 million Dallas judgment.[14] *Cf. Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir.1980) (affirming injunction restraining "any future litigation on any cause of action arising from the fact situation at issue in this case" where claims had previously been litigated); 17 C. Wright & A. Miller, *Federal Practice and Proce-*

---

**14.** During oral argument of Royal's application for this injunction, the Investor Plaintiffs' counsel failed to deny Royal's allegation that the judgment in the Dallas State Action was collusively obtained.

> Now, they have asserted to you that the judgment that was obtained in front of Judge Canales [the Dallas Judgment] was somehow fraudulently obtained. That there was some

sort of fraud on the Court. There is no fraudulent judgment or fraudulent state court judgment exception to the Anti–Injunction Act.... If they are correct that this judgment was fraudulently obtained that is an affirmative defense to the [Brownsville] lawsuit.

Preliminary Injunction hearing transcript at 53–54 (Statement of Michael G. Terry, counsel for Investor Plaintiffs).

**1230**

*dure: Jurisdiction 2d* § 4226 at 552 (1988) (citing cases supporting statement that "[t]here is no difficulty in justifying an injunction against relitigation if there is a showing of bad faith, multiplicity of suits, or other evidence of harassment").

■ In addition, the Court finds that it is authorized to issue an injunction in this case by the "in aid of jurisdiction" exception to the Anti–Injunction Act. Although "[t]he traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court," *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 642, 97 S.Ct. 2881, 2893, 53 L.Ed.2d 1009 (1977) (plurality opinion), the Supreme Court has clearly stated that a federal court may enjoin state court litigation of claims still before the federal court as well as claims already decided by it where the injunction is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the court's flexibility and authority to decide [the] case." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970); *see also Donelon v. New Orleans Terminal Co.*, 474 F.2d at 1113–14 (holding that both the relitigation exception and the in aid of jurisdiction exception to the Anti–Injunction Act

15. Defendants' argument that the "in aid of jurisdiction" exception applies only to *in rem* proceedings is flawed. Defendants rely for this position on *Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 132 (5th Cir.1990), in which the Fifth Circuit "reject[ed] Phillips's rather inventive argument" that Schreiner Bank "placed his encumbered properties within the jurisdiction of the district court when it represented that it would seek only judicial foreclosure on those properties." Accordingly, that case only held that such a promise to the court does not transform an *in personam* action into an *in rem* action for purpose of the Anti–Injunction Act.

*Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), also cited by Defendants for the proposition that the "in aid of jurisdiction" exception applies only to *in rem* actions, is an opinion of only three Justices of the Supreme Court and consequently is not binding precedent. *See, e.g., Three J Farms, Inc. v. Plaintiffs' Steering Comm.*, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982) (denying certiorari of Fifth Circuit ruling in *In re Corrugated*

applied where the court had entered a final judgment as to part of the controversy and still had before it other parts of the controversy).[15]

■ Similarly, it is well settled in the Fifth Circuit that the jurisdiction exception to the Anti–Injunction Act applies where litigants attempt to evade a federal judgment or the continuing jurisdiction of a federal court. In *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1335 (5th Cir. Unit A Oct. 1981), *cert. denied sub nom. Three J Farms, Inc. v. Plaintiffs' Steering Comm.*, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982), the Fifth Circuit found that the exception applied where litigants were attempting to "interfere with the [federal] court's ability to dispose of the broader action pending before it" by filing parallel state court proceedings against some of the same parties to the federal action, despite the fact that there were federal court judgments concerning only some of the controversies in the case. *See id.* In holding that "the injunction was and is not precluded by 28 U.S.C. § 2283," the court found that under circumstances of the filing of "duplicative and harassing litigation" the state court "could not be offended by losing the opportunity to entertain [a] harassing lawsuit."[16] *Id.*

*Container Antitrust Litigation*, 659 F.2d 1332 (5th Cir. Unit A Oct. 1981) where injunction was upheld under "in aid of jurisdiction" exception and relitigation exception in an *in personam* case); *Capital Service, Inc. v. NLRB*, 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954) (upholding injunction of state court proceeding concerning labor dispute under the "in aid of jurisdiction" exception, thereby rejecting *in rem* requirement); *Battle v. Liberty National Life Insurance Co.*, 877 F.2d 877, 881–82 (11th Cir.1989) (citing Fifth Circuit's analysis in *Corrugated Container* in upholding injunction in antitrust case and finding that lengthy, complicated litigation is the "equivalent of a res").

16. The Fifth Circuit's opinion in the *Corrugated Container* case was cited as "persuasive" authority by the Eleventh Circuit in *Battle v. Liberty National Life Insurance Co.*, 877 F.2d at 881. In that case, the court held that "a federal court may enjoin state court plaintiffs from pursuing claims in state court that are substantially similar to claims settled by a final judgment in a

■ In the present case, Royal comes to the Court seeking to protect and effectuate a Summary Judgment and a Final Judgment both appealable pursuant to Federal Rule of Civil Procedure 54(b), entered in the Federal Declaratory Judgment Action. Obviously, the relitigation exception to the Anti–Injunction Act expressly allows the Court to protect and effectuate those Judgments. Furthermore, Defendants' conduct in this case surpasses even the "duplicative and harassing" behavior which the *Corrugated Container* court found deserving of an injunction. Of course, the Investor Plaintiffs have filed duplicative and harassing state court actions directly seeking to circumvent the Court's April 27 and September 8, 1989 Judgments—Judgments they never bothered to appeal—and to "eunuchize" its ability to adjudicate the present action. In addition, the Investors and Lovell—sole shareholder of all of the Quinn–L Entities—entered into a secret side agreement while the Federal Declaratory Judgment Action and the Federal Liability Suits were pending, the sole purpose of which was to pursue Royal. In furtherance of that Agreement to pursue Royal, Lovell allowed a default judgment to be entered against the Quinn–L Entities in the Dallas State Action—a $740 million judgment that, because of the September 4, 1990 Assignment, may ultimately benefit Lovell handsomely. In light of this conduct, the Brownsville court could not be offended by losing the opportunity to entertain the Investors' lawsuits.

In short, the Court finds *In re Corrugated Container Antitrust Litigation*, 659 F.2d at 1335, on all fours with the present case and therefore that the Court has authority to issue the injunction pursuant to both the relitigation exception and the in aid of jurisdiction exception to the Anti–Injunction Act.

### B. Claim Preclusion and Issue Preclusion.

The relitigation exception to the general rule that federal courts shall not enjoin state court proceedings "is founded on the well-recognized concepts of *res judicata* and collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 1690, 100 L.Ed.2d 127 (1988). In the Fifth Circuit, the test for determining whether a claim is barred by the doctrine of res judicata—now generally called claim preclusion—is as follows:

" 'For a prior judgment to bar an action on the basis of *res judicata*, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.' " *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir.1983) (en banc), quoting *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir.1979).

*Southmark Properties v. Charles House Corp.*, 742 F.2d at 869.[17]

■ Similarly, under the doctrine of collateral estoppel—now called issue preclusion—a party is barred from relitigating issues essential to the prior judgment that were fully and fairly litigated in the prior action. As the Fifth Circuit stated in the *Nix* case:

This court has observed that the doctrine of collateral estoppel embodies three requirements: "(1) the issue to be concluded must be identical to that involved in

---

federal ... action" pursuant to both the relitigation exception and the "in aid of jurisdiction" exception to the Anti–Injunction Act.

**17.** In *Kaspar Wire Works, Inc. v. Leco Engineering and Machine, Inc.*, 575 F.2d 530, 536 (5th Cir.1978), the court noted that under certain circumstances when the ground for claim preclusion is a court's prior declaration of rights, "claim preclusion may be inappropriate given the purposeful supplementary nature of declaratory relief." Unlike the situation in *Kaspar Wire*

*Works*, however, here the claim brought by Royal in the Federal Declaratory Judgment Action—concerning the duties to defend and indemnify pursuant to the policies—are subject to the doctrine of claim preclusion.

Regardless of the propriety of claim preclusion in a declaratory judgment case, the *Kaspar Wire Works* court stated that "there is no reason to permit the relitigation of any issue actually litigated and necessary to the judgment rendered in ... an anticipatory declaratory action." *Id.* at 537.

the prior action; (2) in the prior action the issue must have been 'actually litigated'; and (3) the determination of the issue in the prior action must have been necessary and essential to the resulting judgment."

*International Ass'n of Machinists & Aerospace Workers v. Nix*, 512 F.2d at 132 (quoting *Port Arthur Towing Co. v. Owens–Illinois, Inc.*, 492 F.2d 688, 692 n. 6 (5th Cir.1974); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 458–59 (5th Cir.1971)).

Although the Investor Plaintiffs were not joined in the Federal Declaratory Judgment Action, they still may be bound by the Summary Judgment and Final Judgment in that action because in the Fifth Circuit the rule is that " 'the word "parties" does not refer to formal or paper parties, but to parties in interest, that is, that persons whose interests are properly placed before the court by someone with standing to represent them are bound by the matters determined in the proceeding.' " *Southmark Properties v. Charles House Corp.*, 742 F.2d at 869 (quoting 1B *Moore's Federal Practice* ¶ 0.411[1] at 390–91).

 In the present case, there is no doubt that the Investor Plaintiffs may be bound by the Court's prior judgments even though they were not formally parties to the Federal Declaratory Judgment Action. First, the Court specifically found the Investors to be adequately represented by the Quinn–L Entities in the prior action. *See supra* note 5 (finding that "any interest which the investors might have in the subject matter of the declaratory judgment is adequately represented by the existing Defendants"); *Castro Convertible Corp. v. Castro*, 596 F.2d 123, 124–25 (5th Cir.1979) (holding that prior determination of party's right to intervene was res judicata as to

issue of whether party is bound by settlement of prior action); *Brotherhood of Locomotive Firemen and Enginemen v. Seaboard Coast Line R.R.*, 413 F.2d 19, 23–24 (5th Cir.) ("The principles of res judicata are applicable to fully litigated issues raised by a motion to intervene"), *cert. denied*, 396 U.S. 963, 90 S.Ct. 432, 24 L.Ed.2d 426 (1969).

Second, the Investor Plaintiffs may be bound by the Court's prior judgments because they are in privity with Quinn–L by virtue of their control over Quinn–L and, especially, by their status as assignees of Quinn–L's rights against Royal. Indeed, Defendants admit that they are in privity with Quinn–L: "The first time we [the Investor Plaintiffs] had privity with Quinn–L was September the 4th, 1990." Hearing Tr. at 77 (Statement of Samuel L. Boyd).[18]

 Defendants contend that the September 8, 1989 Judgment declared nothing, and hence that neither claim preclusion nor issue preclusion is applicable to the present case. Defendants argue that because the Federal Liability Suits were dismissed prior to the entry of the Judgment in the Federal Declaratory Judgment Action, that Judgment ended a moot case and therefore was a nullity. *See* Defendants' Errata Trial Br. at 14–15.

Defendants' formalistic interpretation of the controversy requirements of the Declaratory Judgment Act and Article III conveniently ignores the applicable case law, making their mootness contention devoid of merit. The United States Supreme Court has held that "[t]he test for mootness ... is a stringent one," and that "[m]ere voluntary cessation" of the conduct constituting a controversy does not moot a case. *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968). The Court's authority to grant declaratory re-

---

**18.** The Investor Plaintiffs apparently believe that because they are judgment creditors as well as assignees of Quinn–L they are not bound by prior judgments rendered against Quinn–L. *See* Hearing Tr. at 77 (statement of Samuel L. Boyd) ("Even though as judgment creditors we didn't lose rights by taking an assignment, we did not lose rights by taking an assignment, but you

would not think so from Mr. Hinshaw [counsel for Royal]."). In *Davis v. Dairyland County Mutual Insurance Co.*, 582 S.W.2d 591, 593 (Tex. Civ.App.—Dallas 1979, writ ref'd n.r.e.), however, the court held that a judgment creditor who is also an assignee of the insured "can stand in no better position than [the assignor]."

lief pursuant to the Declaratory Judgment Act extends to the Article III limits on the Court's authority to adjudicate disputes. *See Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). "A justiciable controversy is distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 240–41, 57 S.Ct. at 464.

Although "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree," *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), in the present case there is no question that a controversy existed between the parties on September 8, 1989. That Defendants would assert otherwise is simply astounding, given the fact that only days later they filed the Dallas State Action and the fact that they claim that the sole reason for seeking dismissal of the Federal Liability Suits was to file the Dallas State Action. *See* Samuel Boyd Deposition, vol. II, at 132 (stating that the Federal Liability Suits' "claims were dismissed with the clear intention that the state claims would be refiled in the state district court"). The dispute between Royal and Quinn–L as to the coverage of the insurance policies was real and concrete, and remains real and concrete to this day—in this Court and in the Brownsville court. The factors determining the duties of Royal under the policies are independent of the underlying claims and were presented to the Court by parties with adverse interests.

Furthermore, the Court cannot permit Defendants to collaterally attack a final judgment entered against them that they did not even bother to appeal. Defendants raised no question as to the "regularity of the court's action" on appeal; accordingly, they are "not the less bound by the decree because they failed to raise [such an issue]." *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 375, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940).

■ The final issue regarding claim preclusion and issue preclusion is determining just which claims and issues were finally determined by the September 8, 1989 Judgment.[19] The claims resolved by the Federal Declaratory Judgment Action may easily be stated. The Judgment declaring no duties to defend or indemnify was final as to all claims brought against Royal in the Federal Liability Suits, namely, Cause Nos. 3–87–2384–H, 3–87–1589–H, 3–87–

---

19. In this regard, the Court notes that traditionally claim preclusion has been held to bar state litigation on a part of the claim that could have been heard in the federal action, but was not raised there. Likewise, the doctrine of claim preclusion has been understood to bar state proceedings on a state law claim that, pursuant to the doctrine of pendent jurisdiction, could have been joined with a claim under federal law in the federal action. *See generally* 17 C. Wright & A. Miller, *Federal Practice and Procedure: Jurisdiction 2d* § 4226 (1988 & Supp.1990) (discussing claim preclusion as bar to state lawsuits and citing cases where federal courts properly enjoined state proceedings on parts of claims that could have, but were not, raised in federal action and on claims that could have been joined as pendent claims in federal cases).

The Supreme Court's opinion in *Chick Kam Choo v. Exxon Corp.,* 486 U.S. at 148, 108 S.Ct. at 1690, stressing the "strict and narrow" requisites for applying the relitigation exception to the Anti–Injunction Act, suggests that the relitigation exception may not fully protect the preclusive effect of a prior federal judgment. Such an interpretation, however, "seems unduly restrictive. The Chick Kam Choo opinion is ambiguous and does not show that a distinction between claim preclusion and issue preclusion was really considered or intended. If the effects of a judgment are to be enforced by injunction, claim preclusion is often as good a candidate as is issue preclusion." 17 C. Wright & A. Miller, *Federal Practice and Procedure: Jurisdiction 2d* § 4226 at 32 & n. 12.1 (Supp.1990).

*Chick Kam Choo* presents no difficulty in the instant case. The claims and issues resolved by the Court's September 8, 1989 Judgment are dispositive of all of the Investor Plaintiffs' claims except those that are alleged to have arisen after the Judgment was entered. An injunction may issue restraining state proceedings on these later claims pursuant to the "in aid of jurisdiction" exception to the Anti–Injunction Act, which is outside the scope of *Chick Kam Choo. See, Chick Kam Choo v. Exxon Corp.,* 486 U.S. at 146–47, 108 S.Ct. at 1689–90 (stating that the relitigation exception "is the only one even arguably applicable here").

1873–H, 3–87–2113–H, 3–87–2114–H, 3–87–2115–H, 3–87–2116–H, 3–87–2117–H, 3–87–2118–H, 3–87–2119–H, 3–87–2120–H, 3–87–2121–H, 3–87–2122–H, 3–87–2123–H, 3–87–2124–H, 3–87–2125–H, 3–87–2126–H, 3–87–2127–H, 3–87–2128–H, 3–87–2129–H, 3–87–2130–H, 3–87–2131–H, 3–87–2132–H, 3–87–2133–H, 3–87–3068–H, and 3–88–1153–H, all of which were consolidated under Cause No. 3–87–2384–H. The Judgment was final as to claims brought under both federal and state laws, including claims under theories of negligence, gross negligence, and violations of the Texas Deceptive Trade Practices Act.[20] The Judgment was final also as to all counterclaims raised by the Federal Declaratory Judgment Action Defendants.

The Judgment was final on all of these claims and counterclaims as to the coverage provided by the following policies: PYA D45334; PYA D 70339; JYN 100825; PLA 172833; PYA 214704; JYN 100329; JYN 100012; JYN 100086; JYN 100090; JYN 100091; JYN 100277; JYN 100329; JYN 100089; PLA 117981; PLA 162920; PLA 162934; PLA 162941; PLA 162942; PLA 162956; PLA 162962; PLA 162915; PLA 162916; PLA 162917; PLA 162929; PLA 162951; PLA 162952; PLA 162953; PLA 162954; PLA 162964; PLA 170503; PLA 170506; PLA 170507; PLA 170510; PLA 170518; PLA 170524; PLA 170525; PLA 170526; PLA 170527; PLA 170560; PLA 170563; PLA 170564; PLA 170580; PLA 172831; and PLA 176580. All of these policies were found to be unambiguous, and Royal found to have no duty to defend or indemnify pursuant to them. Furthermore, the Court conclusively determined that policies AYA B28100, AYA B44881, AYA C04186, AYA 124502, AYA B28100, AYA D45124, AYA 214462, AYA 214502, AYA 214525, AYN 514473, and AYN 569768 were not issued by Royal, Royal was not a party to them, and Royal assumed no obligations under them, and owed no duties of defense or indemnity under those policies. The Court also finally judged that policy PQG 127483 provided inland marine coverage, and Royal had no

duty to defend or indemnify Quinn–L for any of the allegations in the Federal Liability Suits under that policy. The Court also found that policy PQI C47766 provided computer coverage, and Royal had no duty to defend or indemnify Quinn–L for any of the allegations in the Federal Liability Suits under that policy. Accordingly, all of these claims have been finally adjudicated and the Investor Plaintiffs are barred from relitigating them pursuant to the doctrine of claim preclusion and the relitigation exception to the Anti–Injunction Act.

Furthermore, numerous issues were conclusively determined by the Declaratory Judgment Action that were fully and actually litigated and also were necessary and essential to the Court's Judgment. Among these issues are the following: the Investor Plaintiffs alleged no injury to tangible property constituting an occurrence pursuant to the terms of the policies, they alleged no bodily injury constituting an occurrence pursuant to the terms of the policies, they alleged no personal injury or bodily injury in the form of mental anguish constituting an occurrence pursuant to the terms of the policies, and the investors alleged no loss of investment that was within the coverage of the policies because the investors purchased intangibles, not real property.

Furthermore, these issues were determined not solely as to particular policies, but rather as to the language used in many policies, some not brought before the Court until the present action. In other words, the Court finally interpreted the language in certain policy clauses, and the issue of the meaning of those clauses was necessary and essential to the Court's Judgment. Also, contrary to the Investor Plaintiffs' assertion that it was not until the Dallas State Action that mental anguish was pleaded as an injury, in fact that issue was actually litigated and finally determined by this Court by its Order of April 14, 1989 and the entry of Summary Judgment pursuant to that Order on April 27, 1989. *See supra* pp. 1220–22 & n. 6.

**20.** The Court specifies these claims because the Dallas Judgment awarded damages for only these causes of action. *See* PX 90 at 2 (Dallas Judgment).

Accordingly, the Court finds that all of the above-mentioned claims and issues have previously been determined by this Court in Judgments that were appealable pursuant to Federal Rule of Civil Procedure 54. These claims and issues having been finally adjudicated, the Investor Plaintiffs are barred from pursuing or raising them in state court actions pursuant to the doctrines of claim preclusion and issue preclusion as applicable under the relitigation exception to the Anti–Injunction Act.

### C. The "Post–Judgment" Claims.

Although all of the Investor Plaintiffs' claims in the state court actions are premised upon, and dependent upon, the claims and issues previously resolved by the Court, the Investor Plaintiffs also raise claims in their Brownsville actions based on Royal's conduct after the entry of the 1989 Judgment. The Investor Plaintiffs raise claims sounding in tort regarding Johnston's representation of Quinn–L in the Dallas State Action, and also claim that this post-Judgment representation of Quinn–L raises issues of waiver and estoppel as to Royal's duties to defend and to indemnify Quinn–L under the policies that previously were determined to impose no such duties upon Royal.

 ▆▆ Merely reciting these "new" claims makes clear that they cannot be addressed nor resolved removed from the context of the issues of Royal's duty to defend or to indemnify Quinn–L in the underlying fraud actions. Indeed, insofar as the Investor Plaintiffs' alleged damages in the Brownsville action consist of the Dallas State Judgment (trebled, of course), the Investors have no injury independent of the issues of insurance coverage already determined by the Court and presently before the Court in this action.[21] Put another

way, absent the injunctive relief sought by Royal, the state court in Brownsville could irreparably injure the Court's ability to decide the present case.

In discussing the "in aid of jurisdiction" exception to the Anti–Injunction Act, the Supreme Court has explained that situations like the one now facing the Court are precisely what the exception was designed to address. The Supreme Court stated that there are times when "some injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers,* 398 U.S. at 295, 90 S.Ct. at 1747.

This is precisely such a case; absent injunctive relief the Court will likely lose the ability to decide this case (filed well before either Brownsville Action) and may well have its prior Judgments (which are inextricably intertwined with the present action) nullified by contrary state court decrees. Without an injunction, "the Federal District Court would be limited in the action it might take. If the Federal District Court were to have unfettered power to decide for or against the [parties], and to write such decree as it deem[s] necessary ... it must be freed of all restraints from the other tribunal." *Capital Service, Inc. v. NLRB,* 347 U.S. at 505–06, 74 S.Ct. at 702–03. The Court must be allowed "[t]o exercise its jurisdiction freely and fully," *id.,* so it may decide the entire controversy before it, and not merely whatever scraps of the case that might remain following a decision by the Brownsville tribunal.

Also, as has been noted above, the Court finds that *In re Corrugated Container*

---

**21.** Every single claim brought against Royal in the Brownsville Liability Action, Cameron County Court Cause No. 90–09–4464–A, is grounded on the Dallas Judgment. *See* PX 103 (Investor Plaintiffs' Original Petition) ¶¶ 31–43. Likewise, the Brownsville Declaratory Judgment Action, Cameron County Court Cause No. 90–09–5106–A, seeks a "[j]udgment declaring the Royal Insurance Group ... liable for the judgment in *Adkisson, et[] al. v. Quinn–L Capital*

*Corp., et[] al.,* Dallas County Court Civil Cause No. 89–11030–M [the Dallas State Action]." PX 109 (Investor Plaintiffs' First Amended Original Petition) at 13. Also, every single insurance policy specified in the Brownsville Declaratory Action was subject to the September 8, 1989 Judgment and also is presently before the Court in this action. *See id.* ¶ 18, at 9 (listing policies PYA D45334, PLA 172833, PYA D70339, and JYN 100825).

*Antitrust Litigation*, 659 F.2d at 1334–35, is very much on point with both the factual circumstances of and the law applicable to the present case. In upholding the multi-district court's injunction in that case, the Fifth Circuit noted the complexity of the case, the amount of the court's time it had consumed, the numerous claims brought in the litigation, and the many parties involved in holding that the state court should not be allowed to "interfere with the multidistrict court's ability to dispose of the broader action pending before it." *Id.* at 1335. The same considerations apply to the present action, and allowing parallel state court litigation could only undermine the Court's continuing jurisdiction over the case. As the Eleventh Circuit explicitly stated in *Battle v. Liberty National Life Insurance Co.*, 877 F.2d at 882, and as the Fifth Circuit implicitly recognized in the *Corrugated Container* case, "lengthy, complicated litigation is the virtual equivalent of a res," jurisdiction over which may require an injunction against proceedings in another forum.

Furthermore, again as in the *Corrugated Container* case, the Court finds that the Investor Plaintiffs' attorneys " 'have taken, and manifested an intention to continue to take, actions threatening this court's exercise of its proper jurisdiction and the effectuation of its judgments, by filing and threatening to file duplicative and harassing litigation in the courts of [Texas] and by seeking therein orders disrupting the proceedings in [the present action].' " *Id.* (quoting the multidistrict court). Indeed, the Investor Plaintiffs not only have sought to cripple this Court's "exercise of its proper jurisdiction and the effectuation of its judgments" through collusive and duplicative litigation, but also seek to insulate themselves from the consequences of their acts by pleading in the Brownsville Liability Action that Royal "is estopped from collaterally attacking the [Dallas] judgment through any allegations of fraud or collusion." PX 103 ¶ 43 (Investor Plaintiffs' Original Petition).

Accordingly, the Court finds that the Court has the authority to issue an injunc-tion restraining the Investor Plaintiffs from pursuing any and all of the actions now pending in the Brownsville Actions.

### D. Standards For Preliminary Injunctive Relief.

In the Fifth Circuit,

[t]here are four elements a movant must establish to obtain a preliminary injunction: (1) that there is a substantial likelihood of success on the merits; (2) that there is a substantial likelihood that he will suffer irreparable injury if the injunction is not issued; (3) that any threatened injury outweighs the damage the injunction might cause the opponent; and (4) that the injunction will not disserve the public interest.

*Griffin v. Box*, 910 F.2d 255, 259 (5th Cir. 1990) (citing *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d at 386).

▪ The Court finds that Royal has demonstrated that there is a substantial likelihood it will succeed on the merits and will obtain a permanent injunction prohibiting the Investor Plaintiffs and Quinn–L from proceeding further in the Brownsville Actions. The Brownsville litigation is, as the above discussion demonstrates, just another attempt by the Investor Plaintiffs to evade the jurisdiction of this Court, to emasculate its ability to decide the present case, and to evade its prior judgments. Not only have the Investor Plaintiffs filed harassing and duplicative litigation, but they also entered into a secret side deal with Lovell which produced the default judgment in the Dallas State Action. Furthermore, in that case the Investor Plaintiffs' counsel failed to disclose this Court's September 8, 1989 Judgment to the Dallas court, preventing that court from considering the preclusive effect of that Judgment.

In addition, the Court notes that whereas under the Supreme Court's *Chick Kam Choo* decision this Court's application of the doctrine of claim preclusion is somewhat restricted in cases involving the relitigation exception of the Anti–Injunction

Act,[22] when considering the merits of Royal's application for a permanent injunction the Court will apply the Fifth Circuit's "transactional" analysis in order to determine which causes of action were adjudicated in the prior action and hence precluded from further litigation.[23] Under the Fifth Circuit standard, Royal's likelihood of success on the merits is particularly enhanced.

Second, the Court finds that Royal is faced with the prospect of imminent and irreparable injury if the injunction does not issue. In this regard, the Court first notes that the Anti–Injunction Act specifically permits injunctions in situations like those presented by this case, and Royal has a right to rely on that Act to enforce the judgments of the Court. *See Quintero v. Klaveness Ship Lines*, 914 F.2d at 721. The Supreme Court recognized in *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524, 106 S.Ct. 768, 772, 88 L.Ed.2d 877 (1986) that parties have a right to obtain federal interpretation and protection of federal courts' judgments, and to preserve them from compromise and possible nullification in state actions. The Supreme Court in *Parsons Steel* found, pursuant to *Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941), that where "the prevailing party in the federal action [seeks] an injunction against relitigation in state court as soon as the opposing party commenced the state action, and before there was any resolution of the res judicata issue by the state court," injunctive relief may be appropriate. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. at 524, 106 S.Ct. at 772. Indeed, the Supreme Court held that in order that the Anti–Injunction Act be applied so as not to violate the values of the Full Faith and Credit Act, 28 U.S.C. § 1738, an injunction must issue before the state court has ruled on the merits of the res judicata issue. *See, id.; see also Woods Exploration & Producing Co. v. Aluminum Co. of America*, 438 F.2d at 1312 (stating that the relitigation exception to the Anti–Injunction Act "assures the winner in federal court that he will not be deprived of the fruits of his victory by a later contrary state judgment").

Put simply, the irreparable injury facing Royal is the compromise or nullification of the Court's September 8, 1989 Judgment and the Court's ability to adjudicate the present controversy. The Court also is aware that if Royal were allowed to lose the benefit of the prior Judgment, litigants' expectations of finality of federal court judgments would be eroded and collusive behavior designed to evade federal courts' jurisdiction would be encouraged.

Third, the balance of equities in this case overwhelmingly favors Royal. Royal's potential hardship is staggering, whereas the injunction's damage to the Investor Plaintiffs and the Quinn–L Entities is imperceptible because they have no right to relitigate claims and issues fully litigated and determined by a final, appealable judgment. Furthermore, Defendants' conduct in litigating these issues has sunk beneath that criticized by the *Corrugated Container* court, as already discussed above at some length.

Finally, the interests of the public will not be disserved by the issuance of an injunction in this case. As the Court has already noted, principles of federalism are enhanced when an injunction properly is issued pursuant to the exceptions to the Anti–Injunction Act because "nothing would be as productive of friction between the state and the federal courts as to permit a state court to interpret and perhaps to upset such a judgment of a federal

---

**22.** *See supra* note 19 and accompanying text.

**23.** To determine whether the same cause of action is involved in two suits, the Fifth Circuit has adopted the transactional test of the *Restatement (Second) of [Judgments]*. Section 24 of the *Restatement* provides in part:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir.1987) (citation omitted).

**1238**

court." *Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp.*, 244 F.2d at 400 (quoted in *International Ass'n of Machinists & Aerospace Workers v. Nix*, 512 F.2d at 130). Also, today's ruling will operate both to conserve judicial resources and to foster "reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).

### III. Conclusion.

For the reasons stated above, Royal has met the standards for obtaining preliminary injunctive relief in the Fifth Circuit, and such relief is allowed under exceptions to the Anti–Injunction Act. Accordingly, Royal's Application for Injunctive Relief is GRANTED. Plaintiffs Royal Insurance Company of America and Royal Lloyds of Texas shall submit a proposed Order by *noon, December 6, 1990.*

SO ORDERED.