INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS et. al., Plaintiffs-Appellees,

v.

Franklin W. NIX, Defendant-Appellant.

No. 74–1659.

United States Court of Appeals, Fifth Circuit.

April 28, 1975.

Rehearing Denied June 9, 1975.

Franklin R. Nix, Atlanta, Ga., for defendant-appellant.

J. R. Goldthwaite, Jr., Atlanta, Ga., for plaintiffs-appellees.

Before GEWIN and SIMPSON, Circuit Judges, and NICHOLS *, Associate Judge.

GEWIN, Circuit Judge:

This appeal involves a crucial issue of federalism: under what circumstances may a federal court enjoin a proceeding in a state court? Our analysis turns on the applicability to the suit before us of the pivotal law in this area, the Anti-Injunction Act, 28 U.S.C. § 2283:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

This court has reviewed various aspects of the dispute between Nix and his Union and local lodge on four separate occasions. Nix v. Grand Lodge of Int'l Ass'n of Machinists and Aerospace Workers, 479 F.2d 382 (5th Cir. 1973), cert. denied, 414 U.S. 1024, 94 S.Ct. 449, 38 L.Ed.2d 316 (1973); Nix v. Fulton Lodge No. 2, 452 F.2d 794 (5th Cir. 1971), cert. denied, 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972); Nix v. NLRB, 418 F.2d 1001 (5th Cir. 1969); Fulton Lodge No. 2 v. Nix, 415 F.2d 212 (5th Cir. 1969). While our earlier opinions have

* Of the U. S. Court of Claims, sitting by designation.

exhaustively analyzed the facts of this continuing litigation, the importance in the present suit of the principles of res judicata and collateral estoppel necessitates a careful recitation of the precise facts and holdings of the earlier cases.

## I. *Facts*

This litigation is complicated by Nix's dual status as an employee and rank-and-file member of the International Association of Machinists and Aerospace Workers, AFL–CIO (the Union). While employed as a press representative of the Union in 1965, he attempted to organize his fellow staff employees, theretofore unrepresented, into an independent bargaining unit. In this capacity he founded the IAM Representative Association. The Union, abandoning its customary posture, staunchly resisted its employees' organizational efforts, but by 1966 the Representatives Association had won an election and secured NLRB certification as bargaining representative of all staff employees.

Shortly after the Board's certification of the new representative, the Union discharged Nix, alleging simply that it had no work for him. In response, Nix filed Section 8(a)(1), 8(a)(3) and 8(a)(5) unfair labor practice charges with the NLRB. The Union, in turn, offered as an additional reason for Nix's discharge that he had pilfered the confidential papers of his immediate superior, a Union regional vice-president. Nix freely admitted taking the papers but claimed that he did so to prove that the vice-president was defrauding the Union. His action, he argued, was therefore consistent with his duty as a Union member to protect Union funds. The NLRB held that Nix was discharged for pilfering documents from his superior and not because of his organizational activity. International Ass'n of Machinists and Aerospace Workers v. Nix, 172 NLRB No. 239,

1968–2 CCH NLRB ¶ 20,187. We affirmed in Nix v. NLRB, 418 F.2d 1001 (5th Cir. 1969), stating:

> We hold that substantial evidence on the record considered as a whole supports the Board's finding that IAM's [employee Nix was] . . . discharged for cause and not because of [his] union membership and activity. Nix's discharge for pilfering his superior's personal papers . . . [was] legitimate grounds for discharge. The Board properly concluded that the General Counsel failed to sustain his burden of proof that the discharge of . . . Nix . . . was only a pretext to conceal dismissal for membership and activities in IAM's staff representatives' Association.

The next spate of litigation arose from the Union's efforts to oust Nix from membership. Shortly after the Board's certification of the Representatives Association, the Union and the local lodge expelled Nix, claiming that he had slandered a Union official during the course of the representation campaign. Nix filed suit in federal district court based on the right to the exercise of free speech, protected by the union member's "Bill of Rights" of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411. The district court's order enjoining Nix's expulsion from the Union and Lodge and any further interference with the exercise of free speech, Nix v. Fulton Lodge No. 2, IAM, 262 F.Supp. 1000 (N.D.Ga.1967), was affirmed in part [1] by this court. 415 F.2d 212 (5th Cir. 1969).

At this point, Nix sought to gain reinstatement *as an employee* via the LMRDA, having failed to secure such relief in the unfair labor practice action before the NLRB. As the LMRDA protects union members, not employees, Nix was compelled to characterize his discharge as an infringement on *union*

---

1. The district court issued its injunction against the International as well as Fulton Lodge No. 2, although Nix's complaint named only the local lodge. On appeal, this court ruled that the district court's reinstatement order was binding only as to the local lodge, but noted that on remand Nix should be entitled to amend his complaint to seek relief against the International as well. 415 F.2d at 220.

*membership* status, not merely on the rights of an employee. He therefore initiated a new action in the district court, arguing that under the LMRDA he had both a right and a duty to expose the corrupt Union vice-president. The Union, he urged, violated Section 609 of the LMDRA, 29 U.S.C. § 529,[2] in discharging him from employment for an act which was no more than the fulfillment of a Union duty. Nix further sought declaratory and injunctive relief on behalf of all union members on the theory that the provisions of the Union constitution permitting disciplinary action against members for false or malicious statements against other members conflicted with the LMRDA provisions safeguarding the right of free expression.

The district court rejected Nix's contention that his right to employment as a union member was in any way distinctive from his right to continued employment under the Labor Management Relations Act, 29 U.S.C. § 141 et seq., and therefore concluded that the controlling issue of fact concerning the discharge had already been litigated before the NLRB. This court affirmed the trial court's conclusion that principles of res judicata barred further litigation on the issue of Nix's discharge. Nix v. Fulton Lodge No. 2, 452 F.2d 794 (5th Cir. 1971), cert. denied, 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972).[3]

Nix now seeks in state court the remedy which three federal tribunals—the NLRB, the United States District Court for the Northern District of Georgia, and this court—have already denied. Nix presses his state court action for reinstatement in his job on a contract theory, contending that the Union and the Lodge breached the contract of union membership by firing Nix for performing a legitimate union duty. The Union and Lodge initially sought to avoid litigation in the state forum by removing the suit to federal district court, but the district court, finding neither diversity of citizenship nor federal question jurisdiction, granted Nix's motion to remand the case to the Superior Court of Fulton County, Georgia. The Union and Lodge then filed the instant suit in federal district court to enjoin the state court proceedings pursuant to the explicit exceptions to the Anti-Injunction Act. Specifically, the Union argues that an injunction against the state court action is necessary both to protect the jurisdiction of the federal court and to effectuate its judgments since the issue under consideration in state court has already been litigated and resolved in several federal forums. The relitigation of the issues presented in the state court claim, the Union asserts, is barred by principles of res judicata and collateral estoppel.

The district court, concluding that three of the five issues[4] raised in the

2. 29 U.S.C. § 529 provides in part:

   It shall be unlawful for any labor organization, or any officer, agent, shop stewart, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. . . .

3. This court has reviewed Nix's contentions in yet another instance after it declared that his LMRDA claim to employment was barred by res judicata. In Nix v. Grand Lodge of International Assoc. of Machinists and Aerospace Workers, 479 F.2d 382 (5th Cir. 1973), this court affirmed the district court's decision voiding the disciplinary section of the union constitution because of its conflict with the LMRDA and granting reasonable attorney's fees.

4. The district court accurately distilled the following five issues from Nix's "Complaint in Contract", filed in the Superior Court of Fulton County, Georgia (Civil Action No. B 78316, filed September 14, 1972):

   (1) Whether Nix's discharge from his union office constituted: (a) a breach of his contract of union membership by the Union and Lodge, and/or (b) a violation of his contractual right and sworn duty to protect the union's funds (paragraph 9, Nix's state court complaint);

   (2) Whether the failure of the officers of the Grand Lodge of the Union to prefer charges of misconduct (pilferage of officials private papers) against him deprived him of his contractual right to a full and fair hearing on charges affecting his membership, employment, pension rights, and standing with fellow union members to participate

state court complaint, all relating to Nix's discharge from employment, were governed by the rules of res judicata, issued a partial injunction against further proceedings in state court. The district court did not enjoin state court litigation of Nix's remaining two issues, namely whether the Union and Lodge are required to assist Nix in obtaining work and whether the continuing attack by the Lodge on Nix's union membership rights constitutes a breach of the Lodge's contractual duty. Because we find that issues vital to some of Nix's state court claims have been thoroughly litigated and finally decided in prior actions in various federal forums, we affirm the district court's injunctive order.[5]

## II. The Relitigation Exception

In view of the clear considerations of federalism supporting the Anti-Injunction Act, federal courts must proceed with caution in enforcing injunctions against state court proceedings. See American Radio Assoc. v. Mobile Steamship Assoc., Inc., 483 F.2d 1 (5th Cir. 1973). The purpose of § 2283 is to "avoid unseemly conflict between the state and the federal courts." NLRB v. Nash-Finch Co., 404 U.S. 138, 146, 92 S.Ct. 373, 378, 30 L.Ed.2d 328, 335 (1971). See also Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); Oklahoma Packing Co. v. Gas Co., 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537 (1940); Signal Properties, Inc. v. Farha, 482 F.2d 1136 (5th Cir. 1973); Vernitron Corp. v.

Benjamin, 440 F.2d 105 (2d Cir. 1971); Euge v. Smith, 418 F.2d 1296 (8th Cir. 1969) (Blackmun, J.): The Act does not embody a mere "principle of comity" but rather mandates an express and unequivocal limitation on the power of federal courts. Atlantic Coast Line R. R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955). Furthermore, the sensitive nature of federal interference with state court proceedings requires that the statute be strictly construed. Atlantic Coast Line R. R. Co. v. Brotherhood of Locomotive Engineers, supra; Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); Signal Properties, Inc. v. Farha, supra. Cf. Southern California Petroleum Corp. v. Harper, 273 F.2d 715 (5th Cir. 1960).

In this case, the district court enjoined Nix "from proceeding on claims (1), (2), and (3) in Fulton County [Georgia] Superior Court." That the injunction is directed to an individual litigant rather than the state court itself—an entity obviously not a party before the district court—is irrelevant to our considerations. The party seeking injunctive relief from federal court may not, of course, circumvent the clear prohibitions of the Anti-Injunction Act by naming as defendant the state court plaintiff rather than the state court itself. Oklahoma Packing Co. v. Gas Co., supra; Tampa

fully and without coercion in the affairs of the union (paragraph 10, Nix's state court complaint);
(3) Whether in its attack on his union membership the Lodge breached its contractual duty to afford Nix a full and fair hearing as required by the trial procedure provision of the IAM & AW constitution (paragraph 11, Nix's state court complaint);
(4) Whether the Union and Lodge breached their contractual duty owed Nix, a union member, to try and obtain work for out-of-work union members especially in light of their successful efforts to have him discharged from employment with the Central Labor Council of Charleston, West Virginia (paragraph 12, Nix's state court complaint); and,

(5) Whether the continuing attack by the Lodge on Nix's union membership rights in thwarting his participation in the affairs of the Lodge constitutes a breach of the Lodge's contractual duty (paragraph 13, Nix's state court complaint).

5. The district court offered as an alternative rationale for its decision the proposition that a party is barred from litigating in state court any pendent claim, once he has introduced some pendent claims in a federal court suit. In view of our conclusion that this case falls within the "relitigation" exception to the Anti-Injunction Act, we need not evaluate this second ground.

Phosphate R. R. Co. v. Seaboard Coast Line R. R. Co., 418 F.2d 387 (5th Cir. 1969), cert. denied, 397 U.S. 910, 90 S.Ct. 907, 25 L.Ed.2d 90; Joseph L. Muscarelle, Inc. v. Central Iron Mfg. Co., 328 F.2d 791 (3d Cir. 1964); 1 Barron & Holtzoff, Federal Practice and Procedure, § 46, p. 235. In order to affirm the district court's injunction, we must determine that it falls within one of the three Congressional exceptions to the Act. Atlantic Coast Line R. R. Co. v. Brotherhood of Locomotive Engineers, *supra*; Amalgamated Clothing Workers v. Richman Bros., *supra*; Tampa Phosphate R. R. Co. v. Seaboard Coast Line R. R. Co., *supra*. The injunction, in other words, must be "expressly authorized by Act of Congress," "necessary in aid of [the district court's] jurisdiction," or [necessary] "to protect or effectuate [the district court's] judgments." [6]

As there is clearly no Congressional statute granting jurisdiction in these circumstances, the Union argues that the injunction of state court proceedings is necessary to "protect or effectuate" the judgments of federal courts in prior cases. This argument states, in effect, that various federal forums have already considered and decided the precise issues presented to the state court and that principles of res judicata and collateral estoppel preclude relitigation of them.

■ The "relitigation exception"—an aspect of the "protect or effectuate its

judgments" exception to the Anti-Injunction Act—has been evaluated by this court in some detail. *See* Donelon v. New Orleans Terminal Co., 474 F.2d 1108 (5th Cir. 1973); Woods Exploration and Producing Co. v. Aluminum Co. of America, 438 F.2d 1286 (5th Cir. 1971); Teas v. Twentieth Century-Fox Film Corp., 413 F.2d 1263 (5th Cir. 1969); Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp., 244 F.2d 394 (5th Cir. 1957). A consistent theme of our opinions is that federal courts may enjoin the relitigation in state court of issues that federal courts have fully and finally adjudicated.[7] These cases recognize that the modern version of the Anti-Injunction Act, enacted as part of the Judicial Code of 1948, was expressly intended to codify the "relitigation doctrine" which had been eroded by judicial construction.[8] *See* Woods Exploration and Producing Co. v. Aluminum Co. of America, *supra*; 1B Moore's Federal Practice ¶ 0.408[3], p. 961. Rather than doing violence to principles of federalism, this exception, when applied in a proper case, enhances them. As we observed in Jacksonville Blow Pipe, *supra*, "nothing would be as productive of friction between the state and the federal courts as to permit a state court to interpret and perhaps to upset such a judgment of a federal court." 244 F.2d at 400. We advanced an even more practical justification for this doctrine in the *Woods Exploration* case: the relitigation exception "prevents multiple

---

**6.** The second and third statutory exceptions embody much the same concept of protecting the jurisdiction of federal courts. As the Supreme Court stated in the *Atlantic Coast Line* case, the phrase "necessary in aid of" its jurisdiction implies something similar to the concept of injunctions to "protect or effectuate" judgments. Both exceptions to the general prohibitions of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. 398 U.S. at 295, 90 S.Ct. at 1747, 26 L.Ed.2d at 245–6.

**7.** In *Woods Exploration*, we expressly concluded that the so-called "relitigation" exception to the Act had not been eroded by Su-

preme Court pronouncements in *Atlantic Coast Line* and Donovan v. City of Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964).

**8.** In Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1921), the Supreme Court emphatically rejected the notion that federal courts had authority to enjoin state relitigation of issues decided in prior federal cases. The "Reviser's Note" accompanying the 1948 revision of the Act states that "[t]he exceptions specifically include the words 'to protect or effectuate its judgments,' for lack of which the Supreme Court held that the Federal courts are without power to enjoin relitigation of cases and controversies fully adjudicated by such courts." Historical and Revision Notes following 28 U.S.C.A. § 2283.

litigation of the same cause of action and it assures the winner in a federal court that he will not be deprived of the fruits of his victory by a later contrary state judgment which the Supreme Court may or may not decide to review." 438 F.2d at 1312, citing Note, Federal Power to Enjoin State Court Proceedings, 74 Harv.L.Rev. 726, 734 (1961).

The success of Nix's appeal thus hinges on a finding that adjudication of the issues raised in his state court complaint is not precluded by a prior ruling of a federal court. In other words, litigation in state court must not be barred by principles of res judicata or collateral estoppel.[9] Upon consideration of the issues presented in prior litigation, we conclude that the district court properly enjoined certain phases of the pending state proceedings.

The doctrine of res judicata "makes a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters, fact and law, that were or should have been adjudicated in the proceedings." 1B Moore's Federal Practice ¶ 0.405[1] at 624. Such a judgment becomes an absolute bar to a subsequent suit between the parties on matters that were necessarily decided as part of the first litigation.

The Union contends that those state court issues enjoined by the district court have been conclusively determined by two federal forums. First, it contends, the NLRB decided that Nix's discharge was based not on his organizational activities but on his unauthorized pilfering of confidential records of a Union official. The Board's decision was affirmed by this court. Second, when Nix attempted to contest the validity of his discharge in federal district court under the LMRDA, the district court, also

affirmed by this court, concluded that relitigation of the validity of his discharge was barred by the doctrine of res judicata. Consequently, the Union argues that the pending state court suit, with respect to those issues covered by the injunction, is barred by prior decisions in federal forums and that an injunction against further proceedings is therefore proper under § 2283.

The fallacy of this argument is that the doctrine of res judicata is applicable only when the cause of action in the second suit is identical to the cause of action in the first. Lawlor v. National Screen Service Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); 1B Moore's Federal Practice ¶ 0.405[1]. In the instant case, Nix may be seeking substantially similar relief—reinstatement in his job—but he has initiated two separate causes of action which required litigation in two different forums. He could only have brought the unfair labor practice charges before the NLRB. Since he was unable to bring the contract claim based on state law in that forum, he did not "split his cause of action" by bringing it in state court.

But Nix's foundation of his state court action on independent theories of state law does not necessarily extricate his suit from the relitigation exception to the Anti-Injunction Act, for while the doctrine of res judicata may not prohibit this new action, the principle of collateral estoppel does constitute a bar. The requisites of collateral estoppel are in a sense less stringent than those of res judicata since in the former, relitigation of any particular legal or factual issue between two parties (or their privies) which was necessarily litigated and actually decided in the first suit is barred. American Heritage Life

9. The district court, in remanding Nix's contract suit to the state court, explicitly noted that the defendants might raise the res judicata and collateral estoppel issues as defenses in the state court action.

This court has recognized this potentiality. In affirming a district court's denial of an injunction of state court proceedings, we have commented

If we err [in denying the injunction], all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res judicata and collateral estoppel.

Southern California Petroleum Corp. v. Harper, 273 F.2d 715 (5th Cir. 1960).

Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3 (5th Cir. 1974). As the Supreme Court noted in Lawlor v. National Screen Service Corp., *supra*:

> under the doctrine of res judicata, a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

349 U.S. at 326, 75 S.Ct. at 867, 99 L.Ed. at 1126–27. See also Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1878). This court has observed that the doctrine of collateral estoppel embodies three requirements: "(1) the issue to be concluded must be identical to that involved in the prior action; (2) in the prior action the issue must have been 'actually litigated'; and (3) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment." Port Arthur Towing Co. v. Owens-Illinois, Inc., 492 F.2d 688, 692, n. 6 (5th Cir. 1974); James Talcott, Inc. v. Allahabad Bank, Ltd., 444 F.2d 451, 458–59 (5th Cir. 1971).

These principles of collateral estoppel preclude Nix from relitigating in state court certain issues already decided in federal tribunals. The NLRB, affirmed by this court, ruled that Nix stole confidential documents to which he was not entitled. The parties directly confronted this question before the Board and the Board's resolution of it was necessary to the conclusion that the Union had legitimate reasons for discharging Nix which were unrelated to union activity. Relitigation of the issue of whether Nix was justified in taking the official's documents is therefore precluded by the doctrine of collateral estoppel. Thus, even though Nix frames his state court action in terms of state contract law rather than federal labor policy, he may not relitigate the very issue which lies at the core of his claim—the legitimacy of his taking an official's papers. In these circumstances, a federal court need not stand idly by and hope that the state court perceives that the issues before it formed the basis of prior federal court litigation. Rather the federal court may intervene, pursuant to § 2283, "to protect or effectuate its judgments."

Nix contends that this analysis has been undermined by *Atlantic Coast Line* which permits splitting causes of action between state and federal courts. He relies heavily on the following statement:

> While the railroad could probably have based its federal case on the pendent state law claims as well, United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), it was free to refrain from doing so and leave the state law questions . . . to the state courts. Conversely . . . [the railroad] was also free to restrict the state complaint to state grounds alone.

398 U.S. at 295, 90 S.Ct. at 1747, 26 L.Ed.2d at 246. This argument misperceives the thrust of the *Atlantic Coast Line* decision. In that case, the railroad had secured a state court injunction against a union picketing at a railroad yard after failing to gain an injunction in federal court. Two years later, the union requested that the state court dissolve its injunction in view of a recent Supreme Court decision affirming the union's right to picket at a nearby railyard. The state court refused, and the union thereafter obtained a federal court order restraining enforcement of the state court injunction. On appeal, the Supreme Court dissolved the district court injunction, concluding that it was not authorized by any of the three exceptions to the Anti-Injunction Act. Nix draws our attention to that portion of the Court's opinion which expressly recognizes that the initial federal district court decision not to enjoin union picketing did not consider whether federal law precluded an injunction based on state

 

law. 398 U.S. at 290, 90 S.Ct. at 1744, 26 L.Ed.2d at 243. Thus, he suggests, an independent state court decision, based on state law, could not undermine the earlier judgment of a federal court construing federal labor law. While *Atlantic Coast Line* did leave open the possibility of state court litigation of certain issues, the facts of that case were significantly different from the present suit. In this case, the federal tribunals reviewing Nix's discharge expressly determined that he pilfered confidential documents without justification and that the Union did have legitimate cause to discharge him. Nix may not relitigate this fundamental issue in state court merely because he clothes his cause of action in terms of state contract law rather than federal labor law.

■ Finally, we reject Nix's contention that the district court's partial injunction will, as a practical matter, render adjudication of the two remaining state law issues unfeasible. All the issues in this case, he asserts, are so inextricably interwoven that no single claim can be adjudicated apart from the whole controversy. Nix suggests that the Union and the Lodge will attempt to undermine the state court proceedings on the remaining issues by contending that introduction of relevant evidence in the dispute violates the district court injunction. The result, he argues, will be a series of interruptive resorts to the district court in an effort to frustrate litigation of the remaining state law claims. We find these arguments to be entirely speculative and decline to overturn a legally valid injunction because of the mere spectre of complications. We conclude, however, that in issuing a partial injunction, the district court was not prescribing a rule of evidence binding on the state court. In this complicated litigation, the state court, of course, remains free and independent to develop whatever facts it deems vital to the resolution of the remaining questions of Georgia law. Moreover, on oral argument the Union has assured this court that it does not intend to interfere with

a thorough development of the evidence relating to the remaining state court issues and has even volunteered to stipulate as to facts revealed in the background evidence in this litigation which are relevant to those questions. In these circumstances, Nix's contention concerning the practical pitfalls of the district court's injunction is without merit.

The district court's order partially enjoining Nix from proceeding with his suit in Fulton County Superior Court is affirmed.

Affirmed.