**TEXACO, INC. and Texaco Exploration and Production, Inc.**

v.

**John M. DUHE, Jr., et al.**

No. Civ.A. 97–1523.

United States District Court, W.D. Louisiana, Alexandria Division.

Dec. 10, 1998.

Patrick T Caffery, Caffery Oubre et al., New Iberia, LA, Tommy David Bond, Robert E Plumb, Jr, Texaco Inc. Legal Dept., Gene W. Lafitte, Sr., Joe B. Norman, Robert Louis Theriot, Stevia M. Walther, Liskow & Lewis, New Orleans, LA, G. William Jarman, Linda S. Akchin, Charles S. McCowan, III, Kean Miller et al., Baton Rouge, LA, David R. Dugas, Caffery Oubre et al., Lafayette, LA, for Plaintiffs.

William Martin Hudson, III, Oats & Hudson, Andre' F. Toce, Toce & Assoc., Lafayette, LA, for Defendants.

## RULING

LITTLE, Chief Judge.

Before this court is defendants' John M. Duhe, Jr., Gladys Duhe Deutschle, Joseph Preston Duhe, Elias "Bo" Ackal, and Edna Ackal Brower (collectively "defendants") Request for Permission to Appeal Pursuant to 28 U.S.C. § 1292. For the reasons elucidated below, this motion is DENIED.

### I. BACKGROUND

Defendants in this action own royalty interests in hydrocarbon production from real property located in Louisiana. On 3 July 1997, defendants, together with Betty Chauvin Roden, a non-diverse party, issued a demand letter to Texaco Inc. and Texaco Exploration & Production Inc. (collectively "Texaco") under Article 137 of the Louisiana Mineral Code seeking recovery for alleged underpayment of royalties. That same day, defendants and Roden filed suit in the Sixteenth Judicial District Court for the Parish of Iberia ("defendants' state suit"). Defendants' state suit sought a declaration of rights with regard to the mineral interests of four classes of juridical persons. Also on 3 July 1997,

after filing the state suit, defendants, excepting Roden, also filed a federal declaratory judgment action.

On 17 July 1997, before serving the federal complaint on Texaco, defendants filed an *ex parte* Motion for Abstention and Stay of the federal proceedings in light of the pending state action. The federal court granted the stay on 18 July 1997.

Alleging, among other things, that Roden was improperly joined to the state court proceedings, Texaco removed the state court case on 23 July 1997. On 27 October 1997, this court remanded that suit to the Sixteenth Judicial Court.

On 1 August 1997, Texaco responded to the defendant's demand letter of 3 July 1997. Contemporaneously with the issuance of the response, Texaco instituted this federal declaratory judgment action seeking a "complete resolution" of the parties' disputes, including declaratory judgment as to the following: the effectiveness of defendants' individual notice under the Louisiana Mineral Code; whether Texaco's response states a reasonable cause for non-payment; and whether Texaco performed all of its contractual, statutory and legal obligations to defendants. Texaco further requests that, in the event it is determined that defendants are owed any sum as alleged underpayment of royalties or other amounts in this matter, the court render an accounting of the amount owed.

On 18 August 1997, defendants moved for abstention and a stay of this proceeding in favor of the state court action. This court denied that motion on 18 November 1997. Noting that the defendants' state suit intentionally excluded any requests for monetary relief, this court determined that this declaratory proceeding allowed for complete resolution of the issues surrounding the payment of royalty interests to defendants. This court also ascertained that Texaco had not engaged in forum shopping, nor would inequity or inconvenience result from proceeding with this suit.

On 8 July 1998, defendants' filed a motion re-urging this court to abstain and stay these proceedings in favor of the state court proceedings. On 9 September 1998, this court denied that motion, finding that the posture of the case had not changed sufficiently since 18 November 1997 such that abstention was now necessary. Though defendants had since joined their state suit with another class action suit that included claims for monetary relief, the absence of a request for monetary relief was merely one factor in this court's prior decision. The state and federal cases have consolidated discovery, the two cases were proceeding at an identical pace, and no inequity or inconvenience results from these parallel suits.

Defendants now seek permission to appeal, pursuant to 28 U.S.C. § 1292, this court's decision not to abstain and stay these proceedings. In their request to appeal, defendants proffer three primary arguments. First, they urge that this court's decision to proceed is erroneous because this action is narrower than the state action in the following respects: (1) it excludes non-diverse class representatives; (2) it cannot afford the defendants the remedy of lease cancellation; and (3) the state suit includes "unsettled issues of Louisiana Mineral law as to the efficacy of a statewide demand letter and mandatory joinder of all lease interest holders." Def.'s Req. for Perm. to Appeal, ¶ 9. Defendants argue that a resolution in this suit will have res judicata effects on their state claim, and therefore will deny them their choice of a state court forum.

Second, defendants argue that issuing a declaratory judgment in this suit would violate the Anti–Injunction Act. Finally, they maintain that *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), mandates abstention because the state forum may more appropriately apply intricate, complex state law. Defendants also assert that this court must abstain under the Fifth Circuit's decision in *Texas Employ-*

ers' Ins. Ass'n v. Jackson, 862 F.2d 491 (5th Cir.1988) (en banc) [hereinafter *Jackson II* ].[1]

Texaco responds that defendants have not met the standard for an interlocutory appeal, namely, that there was an order involving a controlling question of law, as to which there is substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation. Texaco argues that defendants cannot point to a controlling issue of law on which the decision not to abstain rests—rather the decision was a fact-based exercise of discretion. Moreover, Texaco proffers that defendants merely disagree with the court's decision, which does not constitute a substantial ground for difference of opinion. And immediate appeal will only delay the proceedings.

## II. *ANALYSIS*

### A. *Legal Standard for Interlocutory Appeal*

The standard for certifying an interlocutory appeal is straightforward. Defendants must show that this court issued an order "involving a controlling issue of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Defendants argue that this matter is narrower in scope than the pending state court case, that proceeding would violate the Anti–Injunction Act, an that *Brillhart* and *Jackson II* mandate abstention. To the extent that defendants argue that we ought to certify these issues for interlocutory appeal because we applied the law incorrectly, their arguments essentially urge this court to reopen the issue of abstention. This we will not do. *See gen-*

erally *Ex parte Tokio Marine & Fire Ins. Co.*, 322 F.2d 113, 115 (5th Cir.1963) ("Merely to decide a question of law incorrectly is certainly not an abuse of discretion."). Nonetheless, we will view their arguments as suggesting controlling issues of law as to which there is a substantial difference of opinion.

"An interlocutory appeal assuredly does not lie simply to determine the correctness of a judgment[.]" *Clark–Dietz and Associates–Engineers, Inc. v. Basic Construction Co.*, 702 F.2d 67, 68 (5th Cir., 1983). Matters regarding the exercise of judicial discretion do not fall within the ambit of "controlling questions of law." *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir.1970) (distinguishing a controlling question of law from "a question of fact or matter for the discretion of the trial court."); *J.C. Trahan Drilling Contractor, Inc. v. Sterling*, 335 F.2d 65, 66–67 (5th Cir.1964) (dismissing an interlocutory appeal which "did not involve a controlling question of law within the meaning of Section 1292(b) but merely an exercise of a sound judicial discretion respecting a matter entrusted to the trial court.") *see also* 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3930 at 429 (1996) ("Ordinarily a district court should refuse to certify ... matters [involving exercises judicial discretion], not only because of a low probability of reversal, but also because the recognition of discretion results from a studied determination that appellate courts generally should not interfere."). But the analysis is more textured than "mechanical application of labels such as 'discretionary' or 'non-discretionary,'" Wright, *supra*, § 3930 at 430 (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir. 1974)). Ultimately, certification must fur-

---

1. Defendants cite *Travelers Ins. Co. v. La. Farm Bureau Federation*, 996 F.2d 774, 776 (5th Cir.1993) for the doctrine of mandatory abstention. Nonetheless, we summarize their argument as asking us to apply *Jackson II* doctrine, since *Travelers* was applying *Jackson II* doctrine, and *Travelers* actually created an exception to the *Jackson II* mandatory abstention doctrine.

ther the policy of "permit[ing] interlocutory appeals only for the purpose of minimizing the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Id.* § 3930 at 439.

## B. *The Federal Declaratory Action is Narrower than the State Suit*

■ Assuming *arguendo* that this federal declaratory judgment action may be narrower in some respects than the pending state suit, that fact does not constitute a controlling issue of law. Rather, the defendants are disputing this court's weighing of that factor in reaching a discretionary decision of whether to stay this proceeding in favor of the pending state suit. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 ("[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment[.]"); *Travelers Ins. Co. v. La. Farm Bureau,* 996 F.2d 774, 778 (5th Cir. 1993) ("It is now well-settled in the Fifth Circuit that a district court has discretion over whether to decide or dismiss a declaratory judgment action."); *Hill v. City of El Paso, Texas,* 437 F.2d 352, 357 (5th Cir. 1971) ("The question of when the doctrine of abstention ought to be invoked is a matter that involves the exercise of discretion, and must be approached on a case by case, rather than any general principle, basis." (citations omitted)). Whether the state court may more fully resolve the issues being litigated is a discretionary matter, not a controlling issue of law suitable for § 1292 review.

■ More importantly, immediate appeal will not "minimize the total burdens of litigation on the parties and the judicial system." *Wright, supra,* § 3930 at 439. The federal and state cases have consolidated discovery, so they advance in tandem; dissolving the federal case, therefore, does nothing to ease the burden of litigation on the parties. An appeal will not accelerate termination of the suit; rather, it will merely delay matters fur-

ther. And appealing this issue in no way simplifies the trial court proceedings. We therefore decline to certify this issue for interlocutory appeal.

## C. *The Anti–Injunction Act*

■ Similarly, whether continuing this federal declaratory judgment proceeding violates the Anti–Injunction Act is not a controlling issue of law. The parties do not dispute the legal standard itself. Under 28 U.S.C. § 2283, a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Moreover, the parties do not dispute that "[i]f an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction." *Jackson II,* 862 F.2d at 506 (quoting Wright, Federal Courts § 47 at 285 (4th ed.1983)).

■ Rather, defendants dispute our decision that a declaratory judgment in this case would not have the same effect as an injunction. Yet this determination is clearly discretionary, as explained by *Garrett v. Hoffman,* 441 F.Supp. 1151 (E.D.Pa. 1977) (cited with approval in *Royal Ins. Co. of America v. Quinn–L Capital Corp.,* 3 F.3d 877, 887 n. 8 (5th Cir.1993)). "[T]he [Anti–Injunction] statute explicitly prohibits only injunctions. Its analogical extension to prohibit declaratory judgments is justified in situations where the underlying policy against unseemly interference with proper state litigation applies to both." *Id.* at 1155 (quoting *Thiokol Chem. Corp. v. Burlington Indus., Inc.,* 448 F.2d 1328, 1332 (3d Cir.1971)); *see also Internat'l Assoc. of Machinists and Aerospace Workers v. Nix,* 512 F.2d 125, 129 (5th Cir.1975) (noting that the purpose of § 2283 is to "avoid unseemly conflict between the state and federal courts." (quoting *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 146, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971))). And

although "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion," *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), "the states, as well as the federal government, have a responsibility to maintain the harmony we cherish." *Southwest Airlines Co. v. Texas Internat'l Airlines, Inc.*, 546 F.2d 84, 91 (5th Cir.1977).

"In determining whether the declaratory relief sought in a particular case is barred by § 2283, careful consideration should be given to the 'essential character and purpose' of the suit." *Garrett*, 441 F.Supp. at 1156 (quoting *H.J. Heinz Co. v. Owens*, 189 F.2d 505, 508 (9th Cir.1951)); *see also Southwest Airlines Co.*, 546 F.2d at 91 ("Whether an 'unseemly conflict' [between the federal and state courts] disturbs the harmony of the system, however, turns on the facts of each case."). As a general matter, those cases in which § 2283 would bar declaratory relief fall into "two major categories: (1) cases in which a litigant sought through federal relief to interfere with a pending state proceeding, and (2) cases in which a litigant resorted to federal court in an effort to invalidate, or prevent enforcement of, a state court judgment." *Garrett*, 441 F.Supp. at 1155 (footnotes omitted). The key factor in both types of cases is that plaintiffs "seek[ ] through the [federal] action to forestall an otherwise competent and authoritative state ruling." *Thiokol Chem. Corp. v. Burlington Indus., Inc.*, 448 F.2d 1328, 1331 (3d Cir.1971); *see also Jackson II*, 862 F.2d at 505 (finding issuance of a declaratory judgment barred by § 2283 because "[i]t is plain that the only purpose and effect of TEIA's federal suit was to defeat Jackson's state suit ... and to, in effect, overrule the state trial court[.]"). Cases in which declaratory judgments do not interfere in an unseemly manner with state court proceedings do

not fall within the purview of the Anti–Injunction Act. *See Travelers Ins. Co.*, 996 F.2d at 776–8 ("Travelers brought this [federal] action ... neither to nullify [defendant's] advantage in first bringing suit in [state court] nor to change forums ... [A]lthough the district court could not have enjoined [the] state case under the Anti–Injunction Act, it was nonetheless authorized to review the merits of Travelers' declaratory judgment claim."); *see generally County of Imperial, California v. Munoz*, 449 U.S. 54, 60 n. 4, 101 S.Ct. 289, 66 L.Ed.2d 258 (1980) (recognizing that the "District Court was not barred from entering a declaratory judgment" even though the case held that the Anti–Injunction Act did bar issuance of an injunction).

The Anti–Injunction Act reflects "the dominant principles of comity and federalism." *Texas Employers' Ins. Assoc. v. Jackson*, 820 F.2d 1406, 1425 (5th Cir. 1987) (Jones, J., dissenting) [hereinafter *Jackson I]*, partially rev'd en banc 862 F.2d 491 (5th Cir.1988). to this end, district courts must take care that allowing declaratory judgment in a particular instance does not "transform section 2283 from a pillar of federalism reflecting the fundamental constitutional independence of the states and their courts, to an anachronistic, minor technicality, easily avoided by mere nomenclature or procedural sleight of hand." *Jackson II*, 862 F.2d at 505. The court in *Jackson II* was concerned about two ways in which this could happen. First, it noted that "[a] federal declaratory judgment will, of course, be res judicata of the state suit, thus resolving it as surely as an injunction." *Id.* While this is true, this risk is present in any race to judgment. "[And a] race to judgment is often condoned." *Royal*, 3 F.3d at 886, n. 9 (citing *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and *PPG Industries, Inc. v. Continental Oil Co.*, 478 F.2d 674, 677 (5th Cir.1973)). This point makes clear that res judicata effects alone cannot be the dispositive factor in determining whether a declaratory judgment functions

like an injunction. Rather, a declaratory judgment must also subvert policies supporting federalism before its res judicata effects run afoul of § 2283. *See Travelers Ins. Co.*, 996 F.2d at 777 n. 7 (holding that issuance of a declaratory judgment was proper even though "[u]sing a declaratory judgment action to race to res judicata ... is thoroughly inconsistent with the purpose of the Declaratory Judgment Act and should not be countenanced.").

■ Second, the *Jackson II* court argued that "the declaratory judgment can itself be enforced by injunction under 28 U.S.C. § 2202 pursuant to the 'protect or effectuate' exception to section 2283." *Jackson II*, 862 F.2d at 505. Quoting *Samuels v. Mackell*, 401 U.S. 66, 72, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the *Jackson II* court asserted that "a declaratory judgment issued while state proceedings are pending *might* serve as the basis for a subsequent injunction against those proceedings to 'protect and effectuate' the declaratory judgment, and thus result in a clearly improper interference with the state proceedings." 862 F.2d at 506 (citations omitted) (emphasis added). While this is theoretically possible, the Supreme Court has decreased the likelihood of this risk with later opinions. In 1974, 3 years after *Samuels*, the Supreme Court issued a per curiam opinion holding that after issuing a declaratory judgment, a district court "properly refused to issue [an] injunction [where] there was 'no allegation here and no proof that respondents would not, nor can we assume that they will not, acquiesce in the [district court's] decision[.]'" *Poe v. Gerstein*, 417 U.S. 281, 281, 94 S.Ct. 2247, 41 L.Ed.2d 70 (1974) (quoting *Douglas v. City of Jeannette*, 319 U.S. 157, 165, 63 S.Ct. 877, 87 L.Ed. 1324 (1943)). The clear implication of this decision that an injunction cannot issue automatically to "protect and effectuate" a declaratory judgment. Rather, any injunction must be independently justified, requiring, at a minimum, a showing that a party is flouting a federal order. *Poe*

thereby decreases the likelihood that a declaratory judgment action can be used as an end-run around § 2283.

And in *Munoz*, the Supreme Court rejected the following scenario: "[Since] the District Court was not barred from entering a declaratory judgment, [and] a declaratory judgment unsupported by an injunction would be a nullity ... therefore an injunction was necessary 'in aid of' the District Court's subject-matter jurisdiction[.]" 449 U.S. at 60 n. 4, 101 S.Ct. 289. The Court dismissed this argument as follows: "This argument proves too much, since by its reasoning, the exception, and not the rule, would always apply." *Id.* Obviously, the "in aid of jurisdiction" and "protect and effectuate judgments" exceptions to the Anti–Injunction Act are not one and the same. But why would the Court allow declaratory judgment to be an end-run around § 2283 for one exception but not the other? Both uses of declaratory judgment "prove too much" by allowing the exception to trump the rule in all instances.

We therefore do not read *Jackson II* to prohibit the issuance of declaratory judgments in all instances where these risks exist. Rather, we understand the case to emphasize the gravity of these risks and to demand that district courts engage in adequate risk-management and prevention by satisfying themselves that parties are not using their federal declaratory judgment actions as end-runs around § 2283. Perhaps the most telling support for our interpretation is the fact that two cases, *Travelers Ins. Co.* and *Royal*, both decided by the Fifth Circuit after *Jackson II*, create exceptions to it. These courts allowed the exceptions after they established to their satisfaction that the parties were not forum shopping or attempting to circumvent the limits of § 2283.

■ Therefore, what we glean from the survey of the case law is that the touchstone of determining when a declaratory judgment functions as an injunction is whether issuance of a declaratory judg-

ment would offend principles of federalism and comity. *See Internat'l Assoc. of Machinists and Aerospace Workers,* 512 F.2d at 129. But "before [a court's] deference to federalism can justify deviation from routine federal procedures [like the] exercise[ ] of jurisdiction . . . [it] must confront a significant disruption of federal-state relations. That a federal court must interpret state law does not by itself threaten such a disturbance." *Southwest Airlines Co.,* 546 F.2d at 92 (footnotes omitted). Determining whether this risk of a race to judgment poses a significant disruption of federal-state relations is an exercise of this Court's discretion. *See id.* at 91 ("Whether an 'unseemly conflict' disturbs the harmony of the system, however, turns on the facts of each case.").

We concluded that this case does not present a significant disruption of federal-state relations. It does not fall into either of the two major categories identified by *Garrett.* Texaco did not file this suit to interfere with pending state proceedings; at the time the suit was filed, no state court case existed dealing with the monetary relief Texaco requested. Nor did Texaco come to this court for aid in invalidating or preventing the enforcement of a state court judgment; not state court judgment yet exists. As the *Royal* court observed, "The only interference results from the potential for a race to judgment. [And a] race to judgment is often condoned." *Royal,* 3 F.3d at 886, n. 9. We therefore conclude that a declaratory judgment in this instance will not have the same effect as an injunction.

That defendants quibble with our discretionary assessment that the Anti–Injunction Act does not apply is not a controlling question of law. Nor would certification of this issue serve the compelling purpose of "minimizing the total burdens of litigation on parties and the judicial system." Wright, *supra,* § 3930 at 439. For the aforementioned reasons, an interlocutory appeal on this matter will neither accelerate the termination of this litigation nor

simplify matters for trial. Therefore, we decline to certify this issue for interlocutory appeal.

### D. *Brillhart and Jackson II*

 Finally, whether *Brillhart* and *Jackson II* mandate abstention also do not constitute controlling issues of law. Defendants argue that *Brillhart* "requires abstention when the state forum may more appropriately apply intricate, complex state law, i.e., the interpretation of a complex mineral code." Def.'s Req., *supra,* ¶ 10. Defendants like everything about *Brillhart* but its holding: in that case, the stay was reversed because the district court failed to exercise its discretion in deciding to grant the stay. *Brillhart,* 316 U.S. at 495–96, 62 S.Ct. 1173 "[I]t appears . . . that the District Court did not consider whether . . . the claims sought to be adjudicated . . . in this suit for a declaratory judgment . . . could adequately be tested in the . . . proceeding pending in the . . . state court. This was a matter for determination, certainly in the first instance, by the District Court.". *Brillhart,* as affirmed by *Wilton,* stands for the principle that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act[.]" *Wilton,* 515 U.S. at 282, 115 S.Ct. 2137. An upset over this court's exercise of that discretion does not constitute a controlling question of law.

Nor would certifying this mater for interlocutory appeal relieve the parties or this court of the burdens of litigation. As mentioned before, interlocutory appeal will not accelerate the termination of this litigation or simplify the issues presented for trial. Therefore, we decline to certify this issue for interlocutory appeal.

Defendants also insist that *Jackson II* imposes upon this court a mandatory duty to abstain. The parties agree that the *Jackson II* mandatory abstention doctrine applies where: (1) a declaratory defendant previously field an action in state court against the declaratory plaintiff; (2) the

state case involves the same issues as those involved in the federal case; and (3) the Anti–Injunction Act forbids the district court from enjoining the state proceedings. *Jackson II*, 862 F.2d at 506, *cited in Travelers Ins. Co.*, 996 F.2d at 776. Texaco argues that defendants cannot meet the first prong of this test because they did not file their claim for monetary relief until over 8 months after Texaco filed this declaratory judgment action. We think this argument more adequately goes to the second prong of the test, in that the state court proceedings that defendants instituted before Texaco filed this action did not involve the same issues as those involved in this federal case.

Texaco's argument is admittedly technical and unsupported. Moreover, in *Royal*, the Fifth Circuit held that the Anti–Injunction Act applies when the defendants file a state court case after plaintiffs request a federal injunction, but before the federal injunction has issued. "We subscribe to what we think is the better view—that the Act applies regardless of when the federal and state suits were filed." *Royal*, 3 F.3d at 885. By analogy, Texaco's argument—that *Jackson II* does not apply because the state court case was filed after the request for federal declaratory relief but before a federal judgment issued—is likely to be unpersuasive to the Fifth Circuit.

Nonetheless, we agree that *Jackson II* does not mandate abstention. The fifth Circuit has decided that "federal courts need not abstain from declaratory judgment actions under *Jackson [II]* where the federal suit is filed substantially prior to any state suits, significant proceedings have taken place in the federal suit, and the federal suit has neither the purpose nor the effect of overturning a previous state court ruling." *Royal*, 3 F.3d at 886. In short, we think this federal declaratory judgment action looks more like *Royal* than *Jackson II*. While this action was not filed prior to *any* state suit, it was filed more than 8 months before an identical

state suit. Significant proceedings have taken place in the federal suit, as over a year of discovery has taken place. And the federal suit has neither the purpose nor effect of overturning a previous state court ruling since there is, as of yet, no state court ruling on this matter.

Moreover, we agree with the court in *royal* that "if we were to hold that *Jackson [II]* applied in this scenario, litigants could use *Jackson [II]* as a sword, rather than a shield, defeating federal jurisdiction merely by filing a state court action. Neither *Jackson [II]* nor the concerns underlying it mandate such a result." 3 F.3d at 886. Given defendants' filing of parallel suits in federal and state court, and the later consolidation of the state suit with a state class action that included monetary damages, "the state plaintiff can be viewed as attempting to use the state courts to interfere with the jurisdiction of the federal courts." *Id.* This we will not countenance.

Defendants may dispute our discretionary assessment that *Jackson II* does not forbid our review of this matter, but this is, in the end, a matter of discretion and not a controlling issue of law. Nor will certifying this matter for interlocutory appeal, for reasons stated above, accelerate the termination of litigation or simplify the matters presented at trial. We therefore decline to certify this issue for interlocutory appeal.

Defendants have failed to point to even one controlling issue of law for certification for interlocutory appeal. As a result, we need not consider whether there is a substantial difference of opinion regarding the law, or whether immediate appeal may materially advance the termination of the litigation.

### III. *CONCLUSION*

"The timing of a litigant's resort to the state court is significant." *Barancik v. Investors Funding Corp. of NY*, 489 F.2d 933, 936 (7th Cir.1973). "If a defendant has endeavored to delay [federal] proceed-

ings or to forestall decision on issues pending in the federal court, [initiation of state proceedings] may represent an attempt to obtain a more favorable forum.... [I]t may even evidence disrespect for the federal tribunal." *Id.* Defendants filed parallel state and federal proceedings and stayed their federal proceedings before Texaco was even served in their federal case. They have twice asked this court to abstain and stay these proceedings, and, upon our refusal to do so, now request that we certify our discretionary decision for interlocutory appeal. Yet concurrent litigation is not distasteful, problematic or unusual. *See Royal,* 3 F.3d at 886, n. 9. Defendants should reconcile themselves to the fact that "[w]hether a defendant may be brought to the bar of justice is not for the defendant himself to decide." *United States v. United Mine Workers,* 330 U.S. 258, 310, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (Frankfurter, J., concurring).

Since defendants have failed to demonstrate the existence of a controlling issue of law, about which there is substantial grounds for difference of opinion, and resolution of which will materially advance the termination of the litigation, their Request for Permission to Appeal is DENIED.